JOSEPH F. RICHARDSON ET AL. V. CHARLES W. RICHARDSON ET AL.

[See 83 Mich. 653.]

*Trust—Fraud—Attorney and client—Executors and administrators —Accounting.*

A husband willed all of his property to his wife, and after the will had been admitted to probate his brothers and sisters, through one of their number who had been constituted their attorney in fact for that purpose, employed a firm of attorneys to contest the will, and agreed to pay them for their services a certain percentage of the amount realized from the contest. One of said attorneys and the attorney in fact effected a settlement with the widow of the claims of the contestants against the estate, and the attorney was paid the percentage agreed upon. After receiving the money, said attorney, without the knowledge or consent of his copartner, and acting in the interest of the attorney in fact, who had received the sum paid by the widow on the settlement, obtained releases from a portion of the contestants of their claims against the estate, they all supposing that the negotiations were being had between themselves and the widow, and none of them having any knowledge, nor being informed by the attorney, that their

attorney in fact had already effected a settlement in their behalf, although the attorney knew that the attorney in fact held powers of attorney from all but one of the contestants, and was acting for them, and had no agreement entitling him to any more than his proportionate share of the sum received on such settlement. After the death of the attorney in fact, his executors discounted a note for $10,000, being a part of the sum received on said settlement by their testator, after being informed of the intention of the solicitor for the contestants from whom releases had been secured, as aforesaid, to make them parties to a bill which he contemplated filing in behalf of said contestants to secure a proper distribution of the moneys received by the attorney in fact on said settlement, and allowed the proceeds to remain in the bank where the discount was effected for a full year, at a loss of $600 to the estate which they represented. And in a suit so brought it is held:

*a*—That, so far as the original fund is traceable and recoverable, it should be first applied to the satisfaction of the complainants' demands.

*b*—That the attorney must be held to have acted in his individual capacity, and not for the firm, in securing said releases, and that his conduct, for which his copartner was in no way responsible, did not impair the right of the firm to said fee, it appearing that up to and including the time of its payment said attorney had in good faith acted for all of the contestants under the contract made with him, but that he is liable to the contestants from whom he obtained releases for the remainder of their proportionate share of the money realized upon the original settlement.

*c*—That the executors of the attorney in fact are properly made parties to the bill, and are liable to the complainants for the proceeds of the $10,000 note which was in the possession of their testator in his lifetime, charged with the trust, and which came into their hands as executors; and that their final accounting in probate court will not defeat this claim, said trust fund being no part of the estate, and the complainants not being bound to follow it in proceedings in probate court, and the executors, having knowledge of the facts, being bound to exert themselves affirmatively in the protection of the trust fund, until discharged of the trust, instead of assenting to measures calculated to conceal it; citing Perry, Trusts, § 264; *Fulton v. Whitney*, 5 Hun, 16.

Appeal from Wayne. (Reilly, J.) Argued November 3, 1893. Decided May 22, 1894.

Bill for an accounting. Complainants, and defendants George William Moore, McRae, and Greeley appeal. Decree modified and affirmed. The facts are stated in the opinion, and in 83 Mich. 653.

*James H. Pound (J. D. Turnbull,* of counsel), for complainants.

*Edwin F. Conely,* for appellant Moore.

*McDonell & Hall* and *Hatch & Cooley,* for appellants McRae and Greeley.

MONTGOMERY, J. This case was before the Court at the October term, 1890, and is reported in 83 Mich., at page 653. It is unnecessary to restate the facts or pleadings, except so far as is necessary to a determination of additional questions presented by the present appeal. Since the former hearing, the bill has been amended by making the representatives of George Richardson, deceased, parties, and a decree rendered at the circuit for the sum of $30,000, and interest since September 1, 1886, against George William Moore, Charles W. Richardson, Elizabeth Richardson, and Robert J. Kelley; and in the sum of $10,000, and interest since January 1, 1887, against Charles B. Greeley and Donald McRae, who were executors of the will of George Richardson; and in the sum of $2,000 each, with interest, against Jane Nye and Benjamin F. Starbird, legatees named in the will of George Richardson,—the decree containing a provision, however, that any sums collected of Greeley and McRae, or of Jane Nye or Benjamin F. Starbird, shall be credited on the decree of $30,000 against the Richardsons, Moore, and Kelley, the theory upon which the decree proceeds being that the complainants are entitled to, and should, follow the trust fund so far as practicable, but that, failing in realizing the full sum diverted, the complainants are

entitled to judgment against all who participated in the diversion of the fund.

The complainants appeal from the decree, claiming— First, that the court erred in not charging against the defendants Moore the portion of the fee paid to them out of that portion of the estate belonging to complainants; and, second, that the decree should have run as well against George Whitney Moore as against the other defendants. The defendants George William Moore and Greeley and McRae also appeal. Their several contentions will be noted later.

George Whitney Moore would, of course, be liable for the conduct of his partner in the business for which the partnership of Moore & Moore was employed, viz., the settlement of the claim of the heirs against the estate of Charles W. Richardson, deceased. This settlement was accomplished, and the fee agreed to be paid to Moore & Moore was actually paid, before any steps were taken which resulted in the fraudulent settlement with the heirs. The relation of Moore & Moore to this estate thereupon ceased. It does not appear that George William Moore, from that time on, was acting in behalf of his firm. There was no contract relation between the firm and George Richardson, who had the power of attorney from his brothers and sisters. According to the testimony of George William Moore, he was acting in the capacity of a friend of George Richardson, rather than that of an employed attorney. There is nothing in the case to show that George Whitney Moore knew of the transaction at the time, or that he ratified it or received any benefit from it. Under these circumstances we think it should be held that George William Moore was acting in his individual capacity, and not as a representative of his firm.

Nor do we think the complainants are entitled to recover of Moore & Moore the amount paid them as fees.

It appears very satisfactorily that, up to the time these fees were paid, George William Moore had in good faith acted for all the parties concerned in the contest, including the complainants. The proceeds of the settlement came into the hands of George Richardson as attorney in fact for the complainants, and the percentage which passed into the hands of George William Moore had been earned. He could properly have ended his connection with the case there, and, had he done so, would not have been chargeable with any wrong against the complainants, and there could be no reasonable ground for urging that he had not faithfully served their interests and earned the compensation paid him. To hold that by reason of any subsequent misconduct, growing out of a misapprehension of his duties to his client, or for whatever cause, he became chargeable with this sum, would be to enforce a forfeiture of property already acquired, and in the nature of a penalty for subsequent alleged misconduct. We think the complainants are not entitled to complain of the decree in this respect.

We proceed to a consideration of the questions raised by the appeals of the defendants. It is urged that by reason of the conveyance of a one-half interest in their claim by each of the complainants Albert Richardson and Joseph Richardson, which conveyances were held valid by the former opinion, these complainants are not entitled to the same relief as their co-complainants. This is undoubtedly true. In the distribution of the fund realized, they would only be entitled to share to the extent of their remaining interest as heirs. This is a matter which, however, concerns the complainants alone, and can be provided for by the decree.

It is objected that the bill is multifarious. But if multifarious now, for the reasons urged, it was open to the same objection at the former hearing. It may be further

said that the better practice would have been to raise the question by demurrer to the bill, and have brought it up for consideration by the court below before the testimony had been taken. The objection cannot now avail. See *Payne v. Avery,* 21 Mich. 538; *Wales v. Newbould,* 9 Id. 81; *Snook v. Pearsall,* 95 Id. 534; and *Burnham v. Dillon, ante,* 352.

This brings us to a consideration of the question of whether the acts of George William Moore are such as render him liable, jointly with George Richardson's representatives, for a diversion of the fund. From the testimony in the record it appears that the circuit judge, who saw the witnesses, must have found substantially the following state of facts: After George Richardson had received the sum of $120,000 from Diana Richardson, one-half of which he received as the representative of the complainants, and had signed releases in behalf of, and as attorney in fact for, complainants, and after he had paid Mr. Moore his agreed compensation, leaving in Mr. Richardson's hands $45,000 belonging to the complainants and to Charles W. Richardson, who had purchased the equivalent of a one-sixth interest of Albert Richardson and Joseph Richardson, Mr. Moore accompanied R. J. Kelley, and releases were obtained from all the heirs of the half-blood living in the vicinity of Alpena. These releases were made by complainants, and the settlements effected, each of the complainants supposing that the negotiations were between themselves and Diana Richardson, and none of them having knowledge, or being informed by Moore, that their agent, George Richardson, had already effected a settlement in their behalf; and this, notwithstanding the fact that Mr. Moore knew that George Richardson held powers of attorney from all but one of the heirs, and was acting for them, and had no agreement entitling him (George

Richardson) to any more than his proportionate share of the proceeds. The circuit judge must also have found that in the adjustment with Eben Richardson at Worcester, Mass., the defendant Moore plainly left Mr. Richardson to understand that no settlement had yet been effected, and that the sum of $1,500 was all that Diana Richardson was willing to pay to him in compromise of the contest. There is an abundance of testimony in the record to establish this state of facts. Indeed, it is so strongly supported that it would be an arbitrary exercise of power to override the decision of the trial judge on the facts. This being so, it is too clear for argument that Mr. Moore failed of his duty to those whose interests he had so lately represented, and that he owed the duty to see that they were not misled to their prejudice by reason of lacking information which they were entitled to receive at his hands. It will not do to say that he was employed by George Richardson alone. At this very time, $12,500, paid out of funds belonging to the heirs of the half-blood, was in his possession; and it cannot be doubted that, even though he might have considered his service at an end when the avails of the compromise were in the hands of George Richardson, yet he did not see fit to stop there, and by his conduct, if not by his words, left the complainants to infer that no settlement had yet been effected, and that he and George Richardson were still acting in their interests. It is due to Mr. Moore to say that his failure to measure fully the extent of his obligations to these parties evidently arose from the fact that he was possessed of the belief that George Richardson had, by abandoning the purpose of attempting to maintain a subsequent will, entitled himself to equities superior to those of the brothers and sisters of the half-blood. But we are bound to say that we cannot regard this as a legal justification for the course of Mr. Moore in the matter.

It is strongly insisted that, inasmuch as the fund found its way into George Richardson's hands, and inasmuch as he became accountable to the heirs of the half-blood, they, notwithstanding the fraud, had the right to receive the fund from George Richardson and therefore they have not been damaged by any act to which George William Moore was a party. The Court, at the former hearing, said:

"We have examined the proofs, and find that a great fraud has been committed upon these complainants, by which they have been deprived of their rightful share of the money and notes received by George Richardson upon the settlement with Diana. * * * But it appears to us from all the facts in the case that the complainants should pursue the fund, and reach the same, if possible, received by George Richardson, and which he held in trust for complainants, and that his representatives are necessarily parties to the bill, and that all the parties engaged in the alleged fraudulent design to cheat them out of such notes and money should be made parties."

It is evident that, so far as the fund is traceable and recoverable, it should be first applied to the satisfaction of complainants' demands. This is equitable. But it cannot be doubted that the pretended settlement has been one of the means employed to withhold from complainants their due, and that those concerned in employing these means were jointly concerned in a tortious wrong against the complainants' substantial rights. But for the pretended settlement, there can be no doubt that the complainants would have had their money before the death of George Richardson. It was a measure employed to withhold from them what was theirs, and this amounted to a conversion. It is unnecessary to cite authorities that all concerned in a tort of that character are equally liable. Indeed, it is plainly implied from the holding in the former case that the defendants are liable to complainants here.

A question of more difficulty is whether defendants

McRae and Greeley are liable to complainants for the proceeds of the note of $10,000, which was in the possession of George Richardson in his lifetime, charged with the trust, and which came into their hands as executors. We are satisfied from the testimony that these defendants knew that the complainants claimed that the fund belonged to them. Mr. Turnbull, who acted for the complainants, testifies that defendant McRae was fully informed of all the facts, and was also told that he (Mr. Turnbull) intended to include the names of the executors in the bill of complaint which he then contemplated filing in the interest of complainants. Greeley was also informed of this purpose, and, some time after, discounted the note of $10,000, making the large discount of $1,000 for a single year, and allowed the proceeds to remain in the same bank where the discount was effected for a full year, thus losing to the estate $600. He testifies that this action was taken at the request of, or on consent of, the distributees, and further testifies that they wanted the note discounted and the amount put in cash. He is then asked:

" Q. Why did they say they wanted it discounted?

" A. I don't remember what they said. I don't remember whether there was anything. Afterwards,—after this was discounted,—there was talk of this trouble coming up, but I don't remember whether it was before or after the note was discounted. * * *

" Q. And at the request of the legatees you discounted a perfectly good note, and stood $1,000 discount, without any explanation from the legatees why they wanted it; is that true?

" A. Well, there might have been some explanation why they wanted it done, but they wanted it. The substance of it was they wanted it put into the estate as cash. They were to stand their proportional part of the discount. * * *

" Q. Wasn't it that they understood some of the heirs were going to take proceedings to reclaim that money that they claimed they had been defrauded out of?

"*A.* It might have been. I don't know whether it was or not. I cannot remember. I don't remember the reason that they gave at that time."

In Perry, Trusts, § 344, it is said:

"In the United States, the heirs or executors will take the trust property, and they must settle the accounts of the testator in relation to the trust. They must also see that the property is protected and preserved, but they are not under any obligation to execute the trust."

In Schouler, Ex'rs, § 244, it is said:

"If the representative takes possession of personal property which was in possession of his decedent at the time of his decease, but to which another has title, his exercise of dominion is at his own peril; and, if he sells the property as his decedent's, he is individually liable in trover to the true owner for its value."

See, also, *Rowley v. Fair,* 104 Ind. 189; *Bloxham v. Crane,* 19 Fla. 163. In equity, a payment over of this fund, in good faith and without notice, may afford protection to the executor. See *Mulford v. Mulford,* 40 N. J. Eq. 163. The defendants have not so discharged their duty. They knew the facts, and must be held to have acted at their peril.

Nor does the final accounting by the executors defeat this claim. The trust fund was no part of the estate, and the complainants were not bound to follow the fund in proceedings in probate court. The defendants, with knowledge of the facts, were bound to exert themselves affirmatively in the protection of the trust fund, until discharged of the trust, instead of assenting to measures calculated to conceal it. As is well stated in Perry, Trusts, § 264:

"An executor, in proving the will, and in accepting the office from his immediate testator, accepts not only all the trusts imposed by the immediate will under which he acts, but also all the trusts in respect to the assets which come to his hands, with which his immediate tes-

tator was charged; and he must execute those trusts until he is relieved by a new appointment in the probate court, and a settlement and payment over of the assets."

See, also, *Fulton v. Whitney*, 5 Hun, 16.

In furtherance of the direction given in the former opinion, the decree will be so modified as to make the original fund primarily liable for the satisfaction of complainants' demand. To the extent that Charles W. Richardson, Elizabeth Richardson, Jane Nye, and Benjamin F. Starbird had the benefit of these funds, they should be required to refund the amount received, with interest, and executions will issue against them for this purpose. Complainants will also be entitled to executions against McRae and Greeley for the sum of $10,000, and interest from January 1, 1887, and against defendants R. J. Kelley and George William Moore for the full sum of $30,000 and interest. These various executions, however, will be available to complainants only for the purpose of realizing the sum of $30,000 and interest, with costs. Either of the defendants Moore or R. J. Kelley who may, under this decree, be compelled to make payment of any sum, will be entitled to the process of this Court, or other appropriate proceeding, to compel repayment by those who have had the benefit of the fund, provided that McRae and Greeley shall in no event be charged with more than $10,000, with interest. These last-named defendants will in turn be entitled to take process or proceedings to compel repayment by the distributees.

The other Justices concurred.