RIPPEY *v.* WILSON.

1. Attorney and Client—Charges for Conferences—Bookkeeping—Statements.

Failure of attorney periodically to charge conferences on the books and render statements therefor to client casts doubt upon their legitimacy.

2. Same—Assignment and Reassignment of Patent—Estoppel.

In action by patent attorneys against client on promissory note and for subsequent charges, plaintiffs' claim they were willing to reassign at any time on form drafted by defendant's attorney but that latter refused to present a form and which reassignment they were under obligation to make because of fulfillment of condition precedent therefor *held*, impeached by subsequent claim for share of royalties under the assignment as well as by failure to present a reassignment to defendant except as it recognized validity of plaintiffs' claim and ratified their charges.

3. Same—Nature of Relation.

Relationship between client and attorney is a fiduciary one, not measured by the rule of dealing at arm's length.

4. Same — Fees — Contracts — Scrutiny of Court — Burden of Proving Reasonableness.

An attorney and his client may agree upon fees, but if the agreement is made after the relationship is begun it is subject to scrutiny by the court in case of dispute and the attorney has burden of proof that agreed amount of fees is fair and reasonable.

5. Same—Acquiescence in Account Stated.

Client who acquiesces in attorney's charge as a free contracting person, with knowledge of the facts and for a reasonable time, will be bound by account stated and such situation does not require revaluation of services by the court or critical scrutiny to the unfair disadvantage of the attorney.

6. Same—Promissory Note For Services—Consideration.

Client *held*, liable on promissory note he gave attorneys in payment for services theretofore rendered where attorneys had rendered loyal and valuable services, had produced definite results and charges were reasonable, in the absence of subsequent misconduct by payees which referred back to the note.

7. Same—Patents—Assignment of Interest.

Assignment of interest in patents to attorneys, who had procured their issuance to inventor, at time when circumstances indicated latter was not the kind of a client nor in such a mental state of independence and self-reliance and ability as to render assignment a valid account stated *held*, not beyond scrutiny of the court.

8. SAME—CONFERENCE CHARGES—ESTOPPEL.

Recovery in whole or in any part for conference charges for alleged services rendered subsequent to understanding that future monthly bills rendered to inventor by patent attorneys should include all charges *held*, precluded, where no such conference charges were included in bills rendered until after plaintiffs secured an assignment of an interest in the patents.

9. SAME—FEES—UNPROFESSIONAL CONDUCT—ABANDONMENT.

While an attorney may lose his right to fees for unprofessional conduct or abandonment of his client's case, if the services are severable, misconduct as to one phase does not forfeit fees as to another.

10. SAME—COMPRESSOR PATENTS—SEVERABILITY OF SERVICES—MISCONDUCT.

Services of patent attorneys in securing compressor patents for inventor *held*, valuable, complete and severable from other subsequent services rendered in which misconduct on part of such attorneys is claimed, hence recovery for such of the services as produced definite valuable results is proper.

Appeal from Wayne; Ferguson (Homer), J. Submitted June 3, 1936. (Docket No. 35, Calendar No. 38,445.) Decided June 7, 1937.

Assumpsit by John D. Rippey and Lawrence C. Kingsland against Edward Wilson for sums due on a promissory note and for sums due for attorney fees. Defendant appeals. Plaintiffs cross-appeal. Modified and affirmed.

*Percy M. Lovett* and *Florence N. Clement,* for plaintiffs.

*Oxtoby, Robison & Hull* (*Leo I. Franklin,* of counsel), for defendant.

FEAD, C. J. The parties live in St. Louis, Missouri. Plaintiffs are patent attorneys and had judgment of $10,967.69 against defendant for legal serv-

ices and advances in connection with the procuring and protection of a considerable number of defendant's inventions. Both parties appeal.

Defendant invented a rotary compressor, particularly adaptable to iceless refrigeration but having other uses. On September 8, 1928, he executed to Norge Corporation, of Detroit, Michigan, a license to use his compressor on a royalty basis of 90 cents for each compressor sold by the licensee for refrigeration purposes, "embodying any of the inventions covered by this agreement" and requiring motive power of two or less horse power; and five per cent. of the manufacturer's selling price on others; with a minimum royalty of $10,000 per year. In connection therewith Norge Corporation loaned defendant $40,000 to purchase the outstanding stock of a corporation then owning the patents and to have them reassigned to him. It paid defendant only the minimum royalty and charged against it $4,000 per year to apply on the debt.

Much of the dispute at bar rests upon the fact, and attending circumstances, that on May 11, 1932 the license agreement was amended by supplemental contract; reducing the royalty to 10 cents per compressor "sold by it for refrigeration use and embodying any of the inventions covered by this agreement," but retaining the provision for $10,000 minimum royalty. The supplemental agreement also provided that the debt of defendant to Norge Corporation, then about $35,000, and also all claims of defendant against Norge Corporation for claimed royalties above the minimum be discharged.

The case divides itself generally into three periods of time. From June, 1927 to March, 1930, plaintiffs were principally engaged in obtaining the compressor patents. From March, 1930, to Novem-

ber, 1931, their major services were in conducting interference proceedings, procuring patents and broadening the claims on patents to cover the Norge compressors. After November, 1931, they conducted negotiations with Norge Corporation in an effort to obtain more than the minimum royalties for defendant.

In keeping their books and rendering statements to defendant, plaintiffs made charges for services and advances in connection with each project. These charges, aggregating over $5,000, are not disputed, as facts, by defendant. The dispute in fact is as to the so-called ''conference'' charges. But defendant denies legal liability for any charge.

To 1930 defendant had paid plaintiffs little money, and finally they requested a settlement. In addition to the specific charges, for some of which they had rendered him statements, they presented items of $3,800 and $250 for ''office conferences,'' on the claim that defendant had come to their offices almost daily and talked about the patent affairs. They computed or averaged the hours of the various conferences and charged at the rate of $100 per day. Defendant acquiesced therein and, on March 18, 1930, he and his wife executed to plaintiffs a promissory note for $7,676.92, payable in three months, with annual interest of six per cent., in settlement of plaintiffs' compensation to that date.

However, defendant demurred at the reservation of conference charges from the bills and insisted that in the future the statements should show his total debt. Thereafter regular statements were furnished to him by plaintiffs, containing charges for specific work and advances, each of which indicated the balance due. On their books plaintiffs made some entries of charges for ''numerous confer-

ences" or "conferences" in connection with particular patents and included them in the statements to defendant. Defendant made monthly payments, aggregating $1,800, on account of services, and about $800 on account of expenses to February 20, 1932, and made no payments thereafter.

About 1929 Norge Corporation started to manufacture a new compressor, which it claimed did not involve defendant's inventions, and reported to him for royalty purposes only a small part of its output. Plaintiffs, for defendant, claimed the patents read on all the compressors manufactured by Norge and demanded royalties therefor. For a time plaintiffs devoted their efforts to procuring patents and broadening claims on them in order to satisfy Norge Corporation that it was protected thereby. Later the controversy over royalties became more vigorous. October 16, 1930, plaintiffs gave Norge Corporation notice of cancellation of the license. In the course of correspondence with the Norge Corporation's patent attorney, Mr. Hill, the notice of cancellation was withdrawn January 16, 1931, at Hill's suggestion and without any agreement. In November, 1931, additional patents were issued to defendant which plaintiffs insisted to Norge operated to establish its liability for royalties on all units manufactured.

April 15, 1932, at a conference in Chicago, at the office of Mr. Hill, with Norge Corporation represented by its president, Mr. Blood, and defendant and plaintiff Rippey present, Blood insisted that the license be amended to provide royalties of 10 cents per compressor and threatened cancellation unless his terms were accepted. It was the general understanding that the 10-cent royalty should cover all compressors manufactured by Norge Corpora-

tion.   The testimony does not go into detail, but it appears that Mr. Rippey asked whether the $35,000 debt of defendant to Norge Corporation would be cancelled and Mr. Blood agreed to do it.   At that time defendant's claim of royalties, which plaintiffs were making for him and believed to be sound, was about $80,000 above the minimum paid him.   No agreement was reached at the conference.

Immediately on their return to St. Louis, Rippey and Wilson discussed the situation, Rippey advised Wilson that he could sue Norge Corporation for royalties, he thought recovery could be had but that action would be expensive, his firm did not care to engage upon it unless compensation and costs were provided, and suggested that Wilson think over the matter of accepting the Norge offer or resting upon the existing agreement.   Wilson considered the situation over the week-end, apparently without final decision upon his course of action.   Discussion was also had as to defendant's debt to plaintiffs for fees and advances and Rippey demanded security.

April 19th, plaintiff Kingsland, at Rippey's request, drafted an assignment of defendant's patents to plaintiffs "as collateral security for said indebtedness," which consisted of the note of March, 1930, and the subsequent open account stated in the assignment as $8,449.81.   The instrument recited the negotiations with Norge Corporation and provided: "That in event said negotiations result in a license agreement with said corporation providing for a minimum royalty of at least $10,000 per annum, then the pledged property will be released to the said Edward Wilson by Rippey & Kingsland;" but if the license agreement was not made within 60 days, plaintiffs could sell the patents at public or private sale.   Defendant executed the assign-

ment without objection. The items included in the amount of $8,449.81, to which defendant now objects, are:

"To services day by day conferences in re licensed applications, reissue application, interferences, etc., from Mar. 18, 1930 to Nov. 17, 1931— approximately 35 days, .................. $3,500.
"To services day by day conferences and negotiations with Norge Corporation (November 17, 1931 to May 18, 1932) resulting in cancellation of note of $35,000, and new licenses agreement, .. $3,500."

These items appear upon the books of plaintiffs under date of May 18, 1932, and had not been included in bills rendered defendant. Plaintiffs' claim is that Mr. Rippey and defendant discussed the charges in detail when the security was given and defendant was satisfied with them. Defendant denies such discussion and states that he executed the instrument because he was asked to do so. Mr. Rippey claims to have kept account of the conferences by checking dates and averaging time but, aside from the fact that such bookkeeping did not impress the trial court nor us favorably, the failure periodically to charge the conferences on the books and render statements therefor cannot but cast doubt upon their legitimacy.

After taking security, plaintiffs did no work for defendant except to write a letter to Norge Corporation asking that the terms proposed be changed to 20 cents per compressor, with a minimum royalty of $12,000, and after the controversy over fees arose, to prepare a claim under a patent for other counsel of defendant because of Rippey's greater familiarity with it. Defendant claims that he suggested to Rippey other possible terms of compromise on roy-

alties and did not authorize the letter suggesting 20 cents, but the testimony does not so preponderate.

A few days later Blood asked defendant to come to Detroit to aid in correcting a defect in the device. While there and on May 11th, after discussion in which Blood refused to consider other terms and without notice to plaintiffs, defendant executed the supplemental license agreement above referred to, which was drafted by an attorney for Norge Corporation. The supplemental agreement in no way settled the grave dispute of whether and what Norge compressors embodied defendant's patents, nor did it agree with the understanding that the royalties should apply to the entire output of Norge Corporation, nor did it provide for royalties on compressors manufactured other than for refrigeration.

Immediately thereafter defendant took the contract back to plaintiffs, who made a copy of it. He knew it was not in accordance with the conference understanding. He did not ask plaintiffs to secure a correction of it. Nor did they advise nor take any steps to secure amendment of it. Their future efforts seem to have been wholly directed to the collection of their charges against defendant.

The assignment by defendant of the patents to plaintiffs secured to the latter no part of the royalties under the new license agreement. The execution of the supplemental license agreement fulfilled the condition of the assignment and obligated plaintiffs to release the patents to defendant. Nevertheless, they attempted to obtain part of the royalties to apply on their bill. May 26th, they wrote defendant that they had discovered an additional credit due him of $400 and asked him to return the assignment and execute one which would give them one-half the royalties. Defendant did not execute the

assignment and plaintiffs began to press him for payment or security under threat of legal proceedings. June 13th, they recorded the assignment in the patent office, although the condition for its release had been fulfilled. A few days later they advised Norge Corporation that they had a first lien on the royalties and forbade any further payments to defendant.

In order to secure the benefit of his inventions defendant commenced suit against plaintiffs at St. Louis to compel reassignment of the patents, and the suit is still pending. Plaintiffs' claim that they were willing to reassign at any time on form drafted by defendant's attorney but the latter refused to present a form is not only impeached by their conduct in claiming under the assignment but by their failure to present a reassignment to defendant until October, 1932, when they offered an assignment which defendant refused to accept because it provided for a ratification of the charges made and acceptance might be a recognition of validity of plaintiffs' claim.

Plaintiffs also sued defendant at St. Louis upon the note, which suit, however, was dismissed after the present action was begun. In the suit at bar, garnishment process has run against Norge Corporation. In September, 1933, Wilson commenced suit in Wayne county, Michigan, against Norge Corporation to set aside the 10-cent agreement of May 11, 1932, for fraud and duress, alleging conspiracy between Norge and plaintiffs.

Defendant does not question the specific stated items of plaintiffs' claim of services and advances. He contests the charges for "conferences" not contemporaneously appearing on plaintiffs' books, for lack of proof of agreement, times and reasonable-

ness, and denies their approval by him upon knowledge of the facts and with freedom of action. But he further denies liability for any sum whatever on the ground that plaintiffs were guilty of unprofessional conduct and abandonment of his cause, forcing him to make an unfair contract, rendering their services as a whole worthless to him, and thereby forfeiting all right to compensation.

The court held the note of March 18, 1930, valid; the charge for conferences from March 18, 1930 to November 17, 1931 not sufficiently proved, but allowed plaintiffs $2,000 as reasonable compensation therefor; and denied subsequent "conference" charges on the ground that, by their conduct, plaintiffs had prevented defendant from having the benefit of the supplemental license agreement and he was put to the expense and inconvenience of employment of other counsel and to litigation to obtain what plaintiffs were in duty bound to accord him and secure for him. *Osterling* v. *Rose,* 286 Pa. 263 (133 Atl. 374).

The relationship between client and attorney is a fiduciary one, not measured by the rule of dealing at arm's length. They can agree upon fees, but if the agreement is made after the relationship is begun it is subject to scrutiny by the court in case of dispute. In *Bybee* v. *S'Renco,* 316 Mo. 517 (291 S. W. 459), the court cast upon the attorney the burden of proof that the agreed amount of fees is fair and reasonable. The principle is supported in *Coveney* v. *Pattullo,* 130 Mich. 275; *Neudeck* v. *Horvath,* 244 Mich. 685; *Boyle* v. *Waters,* 206 Mich. 515, 6 C. J. p. 686; 2 R. C. L. p. 1038. On the other hand, a client is not necessarily an incompetent before the law and if he acquiesces in a charge as a free contracting person, with knowledge of the facts, and

especially if he acquiesces in it for a reasonable time, there is no reason for the court to put him under guardianship by revaluing the services or scrutinizing them critically or to the unfair disadvantage of the attorney. His account stated will be binding although he may have some criticism of the fees. *Locke* v. *Woodman,* 210 Mo. App. 90 (216 S. W. 1006; 240 S. W. 498); *Wise* v. *Hardin,* 5 S. C. 325.

The promissory note of March 18, 1930, was executed freely and voluntarily and went unchallenged by defendant for over two years and until he had begun his efforts to escape payment of any fees, however just. Plaintiffs' services had been loyal and valuable, had produced definite results, and the testimony is that the charges were reasonable. There is no ground for denial of recovery on the note unless plaintiffs were guilty of subsequent misconduct which may be referred back to it.

Like considerations do not apply to the approval of the "conference" charges of $7,000, included in the assignment of April 19, 1932. At that time defendant was confronted by the need to make important decisions as to the advisability of accepting a new Norge contract, or rest upon the existing agreement and suing for past royalties, with possible necessity for change of counsel. The terms of the assignment he executed to plaintiffs and of the supplemental Norge contract make it clear that he was not the kind of a client nor in such a mental state of independence and self-reliance and ability as to render the assignment a valid account stated and beyond the scrutiny of the court.

The understanding in 1930 that future bills to defendant should include all charges, the charge upon plaintiffs' books of some conference items and their inclusion in bills rendered, and the fact that

plaintiffs made no claim for other conference fees, either to defendant before the occasion of demanding the assignment or by entry on their own books, until after they had secured the assignment, are persuasive that the later conference charges were an afterthought and were not within the current contemplation of the parties. Plaintiffs do not claim mistake in failing to make charges or in rendering bills. By their understanding and conduct the parties made the monthly statements analogous to accounts stated on the part of plaintiffs. This excludes recovery on the conference items of $7,000, or any part of it, on the ground of reasonable compensation for work not agreed upon or otherwise.

Defendant's claim that plaintiffs are entitled to no compensation whatever rests upon the theory that all their services were part of one transaction, directed to the end of securing the benefit of the Norge contracts, plaintiffs had abandoned defendant and failed to secure to him his rights under the first license agreement, had prevented him from having the benefit of the second agreement and, for such misconduct, had forfeited all compensation.

An attorney may lose his right to fees for unprofessional conduct or abandonment of his client's case. 6 C. J. p. 722; *Bailey Lumber Co.* v. *Dunn,* 109 W. Va. 725 (156 S. E. 79); *Faber* v. *Enkema,* 180 Minn. 493 (231 N. W. 410); *Duffy* v. *Colonial Trust Co.,* 287 Pa. 348 (135 Atl. 204, 49 A. L. R. 406); *Lane* v. *Mitchell* (Tex. Civ. App.), 289 S. W. 195; 45 A. L. R. 1137, note; *Hightower* v. *Detroit Edison Co.,* 262 Mich. 1 (86 A. L. R. 509). But we find no authority that where the services are severable, misconduct as to one phase forfeits fees as to another. Such a rule would be generally unfair and is contrary to the authorities. *Trapnall* v. *Byrd,* 22

Ark. 10; *Davis* v. *Smith,* 48 Vt. 52; *Ellerd* v. *Randolph* (Tex. Civ. App.), 138 S. W. 1171; *Richardson* v. *Richardson,* 100 Mich. 364; 6 C. J. p. 722.

Plaintiffs' services clearly were severable. They secured patents which had so much intrinsic value that defendant has brought suit to set aside the second Norge contract. The value exists whether it is found in defendant's rights under either Norge agreement or in the general market worth of the patents. That value had accrued to defendant before any of the claimed acts of misconduct had occurred. Such services were complete. As herein above allowed, plaintiffs' compensation covers only such services as produced definite valuable results to defendant. Consequently, there is no need for further discussion of the character of plaintiffs' conduct nor to determine whether or in what respect their acts were improper.

The judgment will be modified by eliminating from the account all of the conference charges of $7,000, and allowing plaintiffs the amount of the note and interest and the subsequent stated charges with interest, with costs to defendant.

NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. TOY, J., took no part in this decision. POTTER, J., did not sit.