Jack M. PROVENCAL and Sandra K. Provencal, Plaintiffs,

v.

MICHEL CONSTRUCTION, INC. et al., Defendants.

No. G77–629 CA5.

United States District Court, W. D. Michigan, S. D.

Dec. 24, 1980.

Vittorio E. Porco, Farhat, Burns & Story, P.C., Lansing, Mich., for plaintiffs.

Agnes Kempker-Cloyd, Grand Rapids, Mich., for the United States of America.

OPINION

BENJAMIN F. GIBSON, District Judge.

This matter is before the Court pursuant to a motion for summary judgment filed by the Government. In support of its motion, the Government filed two briefs and an affidavit of John Craig, a county supervisor for the Farmers Home Administration. In opposition to this motion, plaintiffs have filed two briefs and the affidavit of Jack M. Provencal. The Government contends that it is immune from the plaintiffs' action in this case, and further have maintained that plaintiffs have failed to state a claim upon which relief can be granted and have failed to file an administrative claim with a sum certain. After a thorough review of the file and record before this Court, and after due consideration of the arguments of counsel presented during the October 10, 1980, hearing on this matter, this Court concludes that the Government is entitled to summary judgment and dismissal of plaintiffs' claims against it.

Rule 56 of the Federal Civil Procedure, in relevant part, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment is a matter of law.

The Government, as the moving party, must bear the burden of clearly establishing the nonexistence of any genuine issue of any fact material to judgment in its favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the Government has succeeded in this showing, plaintiffs "may not rest upon the mere allegations or denial of [their] pleading," but must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). For the purposes of this motion, evidentiary matter submitted will be taken at "face value." *Begnaud v. White*, 170 F.2d 323, 326–27 (6th Cir. 1948).

In deciding the question before this Court, all inferences drawn from underlying facts contained in the affidavits, exhibits, pleadings, admissions, and answers to interrogatories were viewed in a light most favorable to the plaintiffs. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 157 n. 15, 90 S.Ct. at 1608 n. 15 (citing cases); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962). This Court is required to view this matter in a light most favorable to the plaintiffs, for even if the basic facts are not in dispute, summary judgment is not appropriate when contrary inferences may be drawn from those facts. *United States v. Diebold, Inc., supra; Equal Employment Opportunity Commission v. United Association of Journeymen & Apprentices, Etc.*, 427 F.2d 1091, 1093 (6th Cir. 1970).

Plaintiffs filed their action against the Government and a general contractor for damages allegedly sustained when the general contractor failed to pay certain subcontractors for work performed during construction of the plaintiffs' home. The affidavits show that the sub-contractors filed mechanics' liens against the plaintiffs' property. The plaintiffs had received a loan from the Farmers Home Administration (FmHA). They retained a FmHA-designated attorney to handle the loan closing, and the plaintiffs executed a construction contract with the general contractor for construction of their house. Shortly thereafter, an assistant FmHA county supervisor visited the plaintiffs' partially constructed home and discovered a mechanic's lien posted on the house. After further investigation, it was discovered that the general contractor had left the state and had not paid a number of sub-contractors who had performed work on the house to that date. John Craig, the FmHA county supervisor,

advised the plaintiffs to seek legal counsel "concerning the settlement of [the mechanics'] liens." Affidavit of Jack M. Provencal, ¶ 7. *See also* Affidavit of John Craig, ¶¶ 7, 9.

The plaintiffs contacted the same FmHA-designated attorney who had handled their FmHA loan closing.[1] Plaintiffs also contacted John Craig, the FmHA county supervisor, and, according to plaintiffs, he advised plaintiffs that if they did not settle the mechanics' liens, "the entire matter would be forfeited or FmHA would finish building the house and [would] give [plaintiffs] the first option to purchase it." Affidavit of Jack M. Provencal, ¶ 11. Plaintiffs further state that they paid off the mechanics' liens "as a result of the requirement set down by John Craig and the advice of [the] FmHA attorney." Affidavit of Jack M. Provencal, ¶ 12. It is the conduct of John Craig and the "FmHA attorney" which plaintiffs consider actionable. Plaintiffs maintain that these agents of the Government were negligent in settling the mechanics' liens referenced above. Although plaintiffs' claim against the Government sounds in negligence, this Court believes that it truly sounds in negligent misrepresentation. Accordingly, since the Government is immune from actions for misrepresentation, plaintiffs' claim against the Government must be dismissed.

This Court believes that this case is governed by *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) and *Fitch v. United States,* 513 F.2d 1013, (1975), *cert. denied,* 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95. In *Fitch,* the plaintiff was an inductee under the national lottery system governing conscription. Plaintiff received a draft number which should have guaranteed that he would not be drafted. However, plaintiff's draft number was transcribed erroneously by his local draft board, and he was inducted. One year after his induction, an Army sergeant informed the plaintiff in Vietnam that his induction had been a mistake. He was discharged from active duty three months later. The

---

1. A dispute exists as to whether the plaintiffs retained the FmHA-designated attorney as counsel once the problem with the mechanics' liens arose. The Government also disputes plaintiffs' assertion that the FmHA-designated attorney served as an agent of the Government when consulted by plaintiffs on this second occasion. The Court notes an apparent paradox in the plaintiffs' position. Although they claim that the FmHA-designated attorney committed negligence in advising plaintiffs to pay certain mechanics' liens which allegedly were unenforceable, plaintiffs also maintain that the FmHA-designated attorney declined to represent them. *Compare* Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, at 4, *with* Affidavit of Jack M. Provencal, ¶ 10.

It is elementary to any malpractice claim that the aggrieved party establish the existence of an attorney-client relationship. *Rippey v. Wilson,* 280 Mich. 233, 273 N.W. 552 (1937); *McIntosh v. Fixel,* 297 Mich. 331, 297 N.W. 512 (1941); *Kukla v. Perry,* 361 Mich. 311, 105 N.W.2d 176 (1960). *See Mallick v. Migut,* 22 Mich.App. 140, 177 N.W.2d 200, 201–202 (1970) ("There is little doubt that an attorney has the duty of demonstrating professional skill and care and he must show loyalty *to his client,* since he is in a position of highest trust and confidence." [Emphasis supplied.]) Plaintiffs here have chosen to cast their case against the Government, at least insofar as the actions or omissions of the FmHA-designated attorney are concerned, in a malpractice context. ("Despite the Government's desire to characterize the instant matter as one of misrepresentation, plaintiffs' action is, in essence, one for malpractice." Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, at 2.) Yet, as noted above, plaintiffs have admitted that the FmHA-designated attorney would not represent them in the matter involving the subcontractors' mechanics' liens. Accordingly, even if the Government were not immune from suit in this case, this Court would conclude that plaintiffs' claims could not be based on any conduct attributable to the FmHA-designated attorney. Plaintiffs claim fails to state any grounds for recovery against the Government for the conduct of a FmHA-designated attorney where (1) plaintiffs admit that they did not retain that attorney as counsel and (2) their relationship with that attorney did not rise to one of attorney-client. Absent such a relationship, no duty can arise *vis-a-vis* plaintiffs, and no breach of duty giving rise to a claim of negligence can result. *But cf.* Affidavit of Jack M. Provencal, ¶ 12 (Plaintiffs state that they paid off the mechanics' liens "[in part,] as a result of . . . the advice of [the] FmHA attorney."). Even taking this averment in the light most favorable to plaintiffs, no duty can arise where an attorney-client relationship does not exist.

district court held that the erroneous assignment of the plaintiff's lottery number established the liability of the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674. However, the Sixth Circuit reversed on the grounds that the district court acted beyond the authority Congress had given it.

After reviewing the scope of the waiver of sovereign immunity from liability for torts, the court turned to the question whether the plaintiff's action fell within the misrepresentation exception of 28 U.S.C. § 2680(h). The court said:

> Although [plaintiffs] cast their complaint in the guise of a negligence action, this does not automatically take the case outside the misrepresentation exception. Courts must "look beyond the literal meaning of the language to ascertain the real cause of complaint." *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959), *quoted with approval United States v. Neustadt*, 366 U.S. [696,] 703, 81 S.Ct. 1294 [, 1298, 6 L.Ed.2d 614.]
>
> . . . . .
>
> . . . [Plaintiffs'] complaint "arose out of" a negligent misrepresentation. It occurred when Government agents misrepresented Clyde Fitch's obligation to enter the Army, telling him that he was required to serve when, in fact, he was free from that duty. We are under the same obligation to dismiss the complaint as the Supreme Court recognized in *Neustadt*:
>
> > While we do not condone carelessness by the government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability. 366 U.S. at 710–11, 81 S.Ct. at 1302.

*Fitch v. United States, supra*, 513 F.2d at 1015–16. *See also Reamer v. United States*, 459 F.2d 709 (4th Cir. 1972) (misrepresentation that plaintiff could defer active duty until completion of law school semester if he enlisted, resulting in monetary loss upon earlier order to active duty); *Rey v. United States*, 484 F.2d 45 (5th Cir. 1973) (negli-

gent misrepresentation that hogs were diseased, resulting in inoculations which killed several hogs).

While this Court sympathizes with plaintiffs' position in the case before it, this Court must follow the *Neustadt* and *Fitch* interpretations of the Federal Tort Claims Act. In his terse opinion in *Neustadt*, Mr. Justice Whittaker outlined the general principles to which this Court must adhere in rendering its decision in this matter:

> Throughout [a] line of decisions, the argument [had] been made by plaintiffs, and consistently rejected by the courts . . . that the bar of § 2680(h) does not apply when the gist of the claim lies in *negligence* underlying the inaccurate representation, i. e., when the claim is phrased as one "arising out of" negligence rather than "misrepresentation." But this argument, as was forcefully demonstrated by the Tenth Circuit in *Hall v. United States*, [274 F.2d 69 (10th Cir. 1959)], is nothing more than an attempt to circumvent § 2680(h) by denying that it applies to negligent misrepresentation. In the Hall case, it was alleged that agents of the Department of Agriculture had negligently inspected the plaintiff's cattle and, as a result, mistakenly reported that the cattle were diseased. Relying upon that report, plaintiff sold the cattle at less than their fair value, and sought recovery from the Government of his loss on the ground that it had been caused by the negligent inspection underlying the agents' report, rather than by the report itself. The Tenth Circuit rejected the claim, stating:
>
> > "We must then look beyond the literal meaning of the language to ascertain the real cause of complaint. . . . Plaintiff's loss came about when the Government agents misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease . . . This stated a cause of action predicated representation. Misrepresentation as used in the exclusionary provision [of § 2680(h)] was meant to include negligent misrepresentation." 274 F.2d at page 71.
>
> . . . . .

To say, as the Fourth Circuit did, that a claim arises out of "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, i. e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation," ... and which there is every reason to believe Congress had in mind when it placed the word "misrepresentation" before the word "deceit" in § 2680(h). As the Second Circuit observed in *Jones v. United States*, [207 F.2d 563 (1953)], "deceit" alone would have been sufficient had Congress intended only to except deliberately false representations. Certainly there is no warrant for assuming that Congress was unaware of established tort definitions when it enacted the Tort Claims Act in 1946, after spending "some twenty-eight years of congressional drafting and redrafting, amendment and counter-amendment." [Citation omitted.] Moreover, as we have said in considering other aspects of the Act: "There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation." *Indian Towing Co. v. United States*, 350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48.

. . . . .

... While we do not condone carelessness by government employees in gathering and promulgating ... information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability.

*United States v. Neustadt, supra,* 336 U.S. at 703–04, 706–08, 710–11, 81 S.Ct. at 1298–1299, 1300–1301, 1302; *(footnotes omitted and emphasis in original).*

After a thorough review of all pleadings, affidavits, and discovery materials on file, and after thorough consideration of the arguments of counsel, this Court must conclude that the gravamen of plaintiffs' complaint is that the Government made an improper evaluation of the mechanics' liens so that they were deceived and suffered damages. Although plaintiffs chose to characterize this action as one sounding in negligence, this Court looks beyond the pleadings and concludes that plaintiffs' action against the Government is one consisting of allegations of negligent misrepresentation. As in *Neustadt* and *Fitch,* plaintiffs' harm, if any, stems from *representations* concerning the enforceability or validity of the sub-contractor's mechanics' liens against their property. Whether these representations were made intentionally or negligently is immaterial, for this Court is without jurisdiction to entertain any actions against the Government for either intentional or negligent misrepresentation. Accordingly, plaintiffs' complaint must be dismissed inasmuch as the Government is immune under the exceptions carved out of the Federal Tort Claims Act in § 2680(h).[2]

Plaintiffs rely heavily on *Jordan v. United States,* 294 F.Supp. 204 (S.D.Ga.1968) and *Beech v. United States,* 345 F.2d 872 (5th Cir. 1965), in support of their position that plaintiffs' claim arises out of negligence and not misrepresentation. This Court has reviewed *Jordan* and *Beech,* and can only conclude that neither case should alter the result reached here. In *Jordan,* for example, a truck driver sued the Government to recover for injuries sustained when he was burned by a residue of gas left on the seat of the truck which had been

2. This statute, 28 U.S.C. § 2680(h), as amended, Pub.L. 93–253, § 2, 88 Stat. 50, provides, in relevant part:

The provisions of [the Federal Tort Claims Act] shall not apply to ... [a]ny claim *arising out of* assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation, deceit,* or interference with contract rights. [Emphasis supplied and proviso deleted.]

Plaintiffs do not contend that the proviso applies in this case.

fumigated under the regulation and direction of officials of Secretary of Agriculture. Agriculture Department inspectors allegedly advised the plaintiff that the fumigation work performed on his truck would leave his vehicle safe for operation. However, it appeared that some of the gas used in the fumigation process permanently remained on the seat of the truck after fumigation. The plaintiff's complaint alleged that his burns were caused by the negligence of the Government's Agriculture Department inspectors. The Government defended by contending that the gravamen of the plaintiff's complaint was based on the Agriculture Department inspectors' alleged misrepresentation in informing the plaintiff that it was safe to operate the truck and that other preventive or precautionary steps need not be taken.

After wrestling with the *Neustadt* opinion, the district judge concluded that there existed independently of one another grounds both for misrepresentation and negligence. Moreover, the judge determined that these independent grounds for recovery "were not inextricably bound together." *Jordan v. United States, supra*, 294 F.Supp. at 206. Accordingly, the Government's motion to dismiss was denied.

In *Beech* the plaintiffs filed an action against the Government seeking damages for the alleged negligence of Government hospital employees in maintaining a hospital floor in such a condition as to allow an excessive accumulation of wax on the floor to create a slippery condition. Further, the plaintiffs alleged that the hospital doctors had failed to provide Mrs. Beech with proper care and treatment, resulting in an aggravation of her injuries. In a terse rejection of the Government's contention that the plaintiffs action was barred by the misrepresentation exception of § 2680(h), the Fifth Circuit concluded that since the Government had the duty to communicate to Mrs. Beech a diagnosis of her condition and the duty to render proper care for her treatment, the action against the Government sounded in negligence and not in misrepresentation.

Since the *Jordan* and *Beech* courts concluded that the plaintiffs in those cases had stated claims for negligence, those cases are distinguishable from the case before this Court so as to afford plaintiffs no relief here. In each case, the court determined that the allegations of negligence and misrepresentation could exist independently of one another. In each of those cases, the Government's acts or ommissions arguably gave rise to claims for relief without regard to the alleged misrepresentations made by Government personnel. However, the harm for which the plaintiffs in this Court seek relief cannot be severed in a similar fashion. Plaintiffs' claim, if any, rests on the representations made by the FmHA county supervisor and the FmHA-designated attorney. Assuming that these two persons were agents or employees working for the Government and acting within the scope of their agency or employment, plaintiffs harm resulted, if at all, from the FmHA county supervisor's and FmHA-designated attorney's independent acts or omissions resulting in their judgment that the mechanics' liens were enforceable when allegedly they were not. Whether their representations resulted from intentionally or negligently failing to investigate the validity or enforceability of the mechanics' liens is immaterial, for the Government is immune even from acts or omissions constituting negligent misrepresentation.

Plaintiffs' allegations that their claim rests on the negligence of the FmHA county supervisor and the FmHA-designated attorney in failing to investigate the validity and the enforceability of the mechanics' liens carries no weight since this negligence, even if proved, would serve to identify the source of the *misrepresentation* and not the source of the *injury*. If the Government were negligent, that negligence arguably resulted in a misrepresentation. Any damages suffered by the plaintiffs accordingly could have been proximately caused by the Government's *misrepresentation* and not on the Government's breach of any duty to act reasonably under the circumstances arising independently of any misrepresentation. Therefore, it is apparent that such negli-

gence did not independently cause harm to the plaintiffs. The negligence merely led to the Government's alleged misrepresentations, on which plaintiffs alleged they relied to their detriment. The gravamen of plaintiffs' complaint, therefore, is that the Government is liable for a negligent misrepresentation. Accordingly, this Court can conclude only that plaintiffs' claims for negligence and misrepresentation are inextricably bound to one another, resulting in this Court's determination that plaintiffs' complaint against the Government sounds in misrepresentation and not in negligence.

This Court has reviewed numerous other cases arising in the context of § 2680(h), but none of these cases afford plaintiffs here

any relief. In addition to the cases cited in the margin,[3] this Court considers particularly noteworthy the language contained in *Lloyd v. Cessna Aircraft Co.*, 429 F.Supp. 181, 185 (E.D.Tenn.1977):

. . . [W]here the negligence of federal employees whether by inspection, testing, diagnosis, or otherwise, has resulted in the conveyance of erroneous information, thereby causing damages or other loss to the plaintiff, the courts have held that any action against the national sovereign based on the Federal Tort Claims Act, *supra* is barred by the misrepresentation exception. [Citation omitted.]

On the strength of the authorities cited above,[4] this Court concludes that the

---

**3.** *Ramirez v. United States*, 567 F.2d 854 (9th Cir. 1977) (*en banc*) (medical malpractice case involving Government medical personnel and a plaintiff allegedly harmed by surgeon's failure to warn him of risks associated with a particular surgical procedure, concluding that the plaintiff stated a claim for negligence and not one for misrepresentation only where the gravamen of plaintiff's complaint was that the Government was negligent in failing to warn of foreseeable risks); *Marival, Inc. v. Planes, Inc.*, 306 F.Supp. 855 (N.D.Ga.1969) (third-party plaintiff's complaint against Government dismissed under misrepresentation exception where action was grounded on the Government's statements allegedly made concerning the airworthiness of an aircraft which crashed, and not based on any alleged negligent inspection of that aircraft by Government personnel); *Diaz Castro v. United States*, 451 F.Supp. 959 (D.P.R.1978) (misrepresentation exception found to apply). In *Diaz Castro*, the court said:

Plaintiff further attempts to have us circumvent the clear Congressional mandate envisaged in § 2680(h) by arguing that the damages caused him were occasioned by the fault or negligence of government agents. It is contended that failure of the representatives of the United States to take the necessary precautions in the discharge of a duty imposed upon them is a fact related to, but independent of the misrepresentation on which plaintiff's liability theory is predicated. We fail to grasp the soundness of this argument.

. . . Plaintiff's arduous description of his claim only states the commonly understood definition of the tort of negligent misrepresentation. [Citation omitted.] Paraphrasing from *Indian Towing Co. v. United States*, [350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955)], nothing in the Tort Claims Act reveals that Congress intended to draw dis-

trinctions so finespun as to be almost incapable of being held in the mind for adequate formulation. [Citation omitted.]

*Diaz Castro v. United States, supra*, 451 F.Supp. at 963 (footnote omitted). *See also National Mfg. Co. v. United States*, 210 F.2d 263, 275 (8th Cir. 1954), *cert. denied*, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108: "To misrepresent means to 'to give a false, improper or imperfect representation' and that is the charge against the government employees here." *Accord Summers v. United States*, 480 F.Supp. 347 (D.Md.1979).

**4.** The Court has reviewed *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), cited by plaintiffs in support of their position that the Government's liability centers on its having assumed a duty under the circumstances presented in the case before this Court. While defendants are correct that the Government may be liable for having breached a duty which is voluntarily assumed under certain circumstances, this Court believes that plaintiffs have incorrectly perceived the *nature* of the duty, if any, which the Government may have assumed in this case. Assuming that sovereign immunity were not at issue here, if the Government was not duty-bound to speak in this case, yet did utter statements on which plaintiffs could rely reasonably, then the Government would have been under a duty to speak truthfully. Any action for breach of this duty would sound in misrepresentation; but since the Government is immune from even negligent misrepresentation, no action against it can be maintained. To say, as plaintiffs do, that the Government is liable for having acquired in a negligent fashion the information on which it based its judgment concerning the validity and enforceability of the mechanics' liens is simply to say that the Government is responsible for a negligent misrepresentation.

Government is immune from liability for any damages sustained by plaintiffs as alleged in their complaint. Accordingly, the Government's motion for summary judgment is granted and plaintiffs' complaint as against the Government is dismissed.[5]

It also appears from the Court's records that the remaining defendants have yet to be served. Inasmuch as plaintiffs filed this case on December 28, 1977, and since a return of service on the other defendants has not been filed with the Clerk of the Court, the Court hereby orders the Clerk of the Court to enter a dismissal of plaintiffs' claims against the remaining defendants without prejudice. If within ten days of the entry of this Opinion and Order plaintiffs show cause why these claims should not be dismissed the Court will consider reinstatement.

IT IS SO ORDERED.

The Government's conduct and its representations cannot be divided.

5. The Government also has argued that plaintiffs' action against the Government fails to state a claim upon which relief can be granted because Michigan law imputes no duty on a mortgagee to protect a "claimant's" interest.

Additionally, the Government has contended that plaintiffs have failed to file their administrative claim with a sum certain as required by 28 C.F.R. § 14.2(a). Inasmuch as this Court has held that the Government is immune from plaintiffs' action, the other two issues raised by the Government will not be treated.