WYLIE v. CITY COMMISSION OF THE CITY OF GRAND
RAPIDS.

*In re* GEIB.

1. ATTORNEY AND CLIENT—EQUITY—CLASS SUITS—FEES.
   Payment of costs, expenses and reasonable counsel fees may be
   made out of fund recovered in equity incident to prosecution
   of class litigation which has resulted in establishing, preserv-
   ing or protecting a fund in which the class litigants are decreed
   rights of participation.

2. SAME—CONTRACT FOR COMPENSATION.
   The creation of the relation of attorney and client by contract
   express or implied is essential to the right of the attorney
   to compensation.

3. SAME—COMPENSATION.
   Generally speaking, an attorney must look to the one who em-
   ployed him for his compensation even though others were in-
   cidentally benefited by his services and accepted such benefits.

4. SAME—CLASS LITIGATION—EQUITY—COUNSEL FEES.
   The right of a court of equity to order payment of counsel fees
   out of a fund secured or protected by so-called class litigation
   depends upon the facts and circumstances of the case.

5. SAME—CLASS LITIGATION—ATTORNEY FEES—EQUITY.
   Payment of attorney fee out of fund secured or protected by class
   litigation will be required in a court of equity, where from the
   circumstances of the case an implied contract to do so ap-
   pears or is to be inferred.

6. SAME—SPECIAL ASSESSMENTS—ORDER FOR PAYMENT OF ATTORNEY
   FEES—CONTRACTS.
   In the proceedings to secure repayment of special assessments
   paid and cancellation of future assessments, brought on behalf
   of 21 property owners, which were brought to a successful con-
   clusion largely through the efforts of one attorney, where it
   appears that two of the litigants were represented by
   personally-retained counsel and had no express agreement
   with the one attorney for fees although they had made volun-
   tary contributions toward defraying costs and fees, order of

court requiring payment of attorney's fee to him out of fund recovered for such litigants on theory there was an express contract was improper.

7. SAME—SETTLEMENT OF FEE BY TRIAL COURT.

Provision of decree whereby trial court determined that the fair and reasonable value of services of personally retained attorneys for one of 21 parties seeking repayment of special assessments was a certain sum was erroneous where neither she nor her attorneys sought to have court adjust their compensation as being without the trial court's authority on petition of another attorney whose ingenuity and skill was principally responsible for bringing the litigation to a successful conclusion.

8. SAME—FEES—DETERMINATION—PROBATE COURT.

Provision of decree for attorney fee to be paid personally retained counsel of one of 21 litigants in proceedings to recover special assessments although sought by representatives of the estate of such litigant was without the jurisdiction of the trial court on petition of another attorney who was principally responsible for the successful conclusion of the litigation and not personally retained by such litigant or by the representatives of his estate, the settlement of such fee being a matter for determination in the probate court, hence provision of decree is stricken without prejudice.

9. SAME—COMPENSATION—DEFAULT IN PAYMENT OF TAXES ON PROPERTY.

Default in payment of taxes on property involved in protracted litigation wherein property owner had engaged petitioner to obtain repayment of special assessments for trunkline highway already paid and cancellation of those remaining unpaid is not an appealing reason for denying compensation to counsel who was successful in obtaining respective refunds and cancellations.

10. JUDGMENT—RES JUDICATA—STATUS OF LITIGANTS IN CLASS SUIT.

Decree in suit authorizing recovery by 2 property owners of special assessments which had been levied for trunkline highways, in which issue as to status of litigants as parties to a class suit was not before Supreme Court on appeal nor mentioned by it in its decision, was not *res judicata* of issue as to status of litigants, in proceedings at foot of decree for determination of attorney fees and for distribution of fund recovered.

11. ATTORNEY AND CLIENT—COMPENSATION.
    While an attorney should be as fully compensated as the circumstances of a given case will permit, the rights of his client must not be overlooked.

12. SAME—FEES—EQUITY.
    Fee for attorney in proceedings for recovery of special assessments for trunkline highways wherein he obtained a cash refund of $10,721.58 and cancellation of liens in the amount of $20,352.12 and for which he has already received from his client and other interested litigants the sum of $5,539.24 is fixed at a further sum of one-third of the cash refunds and one-fifth of the liens cancelled to be paid from the cash refund.

13. COSTS—APPEAL BY BOTH PARTIES.
    In controversy over attorney fees where both client and attorney appealed but neither fully maintained their respective positions on appeal, no costs are awarded.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 14, 1941. (Docket No. 102, Calendar No. 41,468). Decided April 8, 1941. Rehearing denied May 21, 1941.

Bill by Henry Smith against City Commission of the City of Grand Rapids, the city and its commissioners to recover sums paid on special assessments, for an accounting and injunctive relief. Proceedings at foot of decree to fix attorneys' fees and distribute funds impounded. From the trial court's decree, Fred P. Geib appeals. Curtis M. Wylie and Walter F. Perschbacher, executors of the estate of Henry Smith, deceased; Estella Graham and Arent Van Stensel, executors of the estate of Thomas E. Graham, deceased; and Annie Graham cross-appeal. Modified.

*Dean S. Face,* for appellant Fred P. Geib.

*Travis, Merrick & Johnson,* for the executors of the estate of Henry Smith, deceased.

*Russell Van Kovering,* for the executors of the estate of Thomas E. Graham, deceased.

*Linsey, Shivel, Phelps & Vander Wal,* for Annie Graham.

North, J.  This proceeding is one for the purpose of fixing the amount of attorney fees and distribution of funds impounded by the trial court.  The litigation incident to which it arises has been before this Court on former occasions and the general background may be ascertained by reference to *Smith* v. *City Commission of Grand Rapids,* 281 Mich. 235, and *Wylie* v. *City Commission of the City of Grand Rapids,* 293 Mich. 571.  Briefly, the purpose of instituting proceedings before the Grand Rapids City Commission, which was followed by litigation in the trial court and appeals to this Court, was to secure for 21 property owners repayment of assessments theretofore paid by them respectively incident to the improvement and construction of State highway M-50, and also to secure the cancellation of liens on their respective properties for the portion of such assessments remaining unpaid.  In the final decree in this Court in the *Wylie Case* the following provision was made:

"Application may be made at the foot of this decree to the superior court of Grand Rapids in chancery, in this cause for a determination by said court of the amount of fees and expenses to be paid by the property owners in district 4146 (exclusive of the city of Grand Rapids or any of its departments) as just compensation as between attorney and client, to be paid in such manner as the parties in interest may agree or as said court shall direct."

The matter referred to was heard and determined in the superior court of Grand Rapids.  From such

determination four of the parties have appealed.
In brief, their respective contentions are as follows:

(1) Petitioner, attorney Fred P. Geib, who at the
outset of these proceedings represented Henry Smith
and after the latter's death the Smith estate to the
time of entering the final decree, asserts that the
amount of compensation awarded him, $16,089.96,
was "a smaller amount than was fair and reason-
able under the facts of the case;" and "that the
compensation awarded the several counsel was not
based proportionately upon the contributions of
respective counsel to the production of the success-
ful result and of the fund available for distribution."

(2) The estate of Henry Smith, deceased, repre-
sented in the present proceeding by attorneys
Travis, Merrick & Johnson, and attorney Carl Rid-
dering, contends on this appeal that the amount
awarded as attorney fees to Mr. Geib is excessive;
and this estate resists the decreed payment of
$10,550.72 out of the cash refund recovered, in addi-
tion to payments previously made for prosecution
of the litigation.

(3) The estate of Thomas E. Graham, deceased,
his death having occurred pending this litigation,
is represented on this appeal by attorney Russell
Van Kovering. This estate contends that the trial
court was in error in ordering any portion of Mr.
Geib's fees to be paid out of the cash refund re-
covered for it. In behalf of this appellant it is as-
serted that the Graham estate, having appeared in
the litigation by personally retained counsel, should
not be required to contribute to the attorney fee to
be paid to Mr. Geib, as was decreed in the trial court;
but if any such contribution is decreed only one-half
thereof should be paid to Mr. Geib and the balance
should be paid to Cornelius Hoffius, the attorney

who represented the Thomas Graham estate for substantially three years of the pendency of this litigation, but who upon being elected as a circuit judge in Kent county discontinued participation in this litigation, and his client thereafter was represented by attorney Russell Van Kovering.

(4) Mrs. Annie Graham from the outset was and now is represented in this matter by her personally retained attorneys, Linsey, Shivel, Phelps & Vander Wal. The trial court ordered contribution from the refund recovered for Mrs. Graham toward payment of attorney fees to Mr. Geib. On this appeal it is urged in her behalf that since throughout the controversy she was represented by personally retained counsel she cannot be required to contribute to the fees of other counsel on the theory that this is class litigation; especially in view of the fact that she made voluntary contribution to the general expense of prosecution and this with an alleged understanding and agreement with Mr. Geib that the contribution made by Mrs. Graham was all that she should be required to pay.

As above noted there were 21 property owners interested in the outcome of this litigation. The respective claims of 18 of these property owners were relatively small. One of these 18 who evidently had not paid any portion of the highway assessment on his land was decreed only the cancellation of the assessment lien in the amount of $13.14. The other 17 of this group, which have smaller individual interests in the litigation, were decreed a total cash refund on their paid assessments amounting to $2,512.05. Prior to a hearing in the superior court of Grand Rapids it was arranged by mutual agreement that each of these property owners who had a lesser interest in the litigation should pay to Mr. Geib as compensation for the services which he had rendered

for their benefit, one-third of the amount decreed to them respectively as a cash refund for paid highway assessments. As a result none of this group of 18 is interested in this appeal. Instead the appeal involves only the rights of (1) Mr. Fred P. Geib, (2) the Henry Smith estate, (3) the Thomas E. Graham estate, and (4) Mrs. Annie Graham.

By the terms of the final decree the estate of Henry Smith obtained a cash refund of $10,721.58 and cancellation of liens in the amount of $20,352.12; the Graham estate obtained a cash refund of $13,222.95 and cancellation of liens amounting to $35,357.56; and Annie Graham obtained a cash refund of $7,712.46 and cancellation of liens amounting to $12,531.78. As already stated, different positions are taken by the respective parties to this appeal and for that reason we give consideration separately to the respective contentions thus presented. But before doing so the matter will be somewhat clarified by the following general observations.

The controversy which resulted in the principal suits hereinbefore noted came to Mr. Geib's attention and had its inception early in 1935. The litigation continued until August, 1940, a period of upwards of five years. While, as hereinbefore noted, two of the property owners other than the Smith estate, having extensive interests involved, were represented from the outset by personally retained counsel, it is clearly disclosed by this record that Mr. Geib throughout took what may be termed the initiative in prosecuting this litigation. The skill and ability with which he conducted the principal suits to a successful conclusion commands highest commendation. The perplexity in the present proceedings arises from the fact that he had no agreement with his own client or with any of the other property owners as to the amount or rate of his

compensation, and also from the fact that he was not counsel of record for other parties who sought and obtained substantial relief. But, as above intimated, it fairly appears from this record that both in matters which preceded instituting suit and throughout the preparation and trials in the superior court of Grand Rapids and on the appeals to this Court Mr. Geib assumed primary responsibility and rendered the major portion of the service which culminated in a successful result. In character the litigation was somewhat novel and, throughout, the asserted rights of the property owners were vigorously contested. However, the petitioner admits that at all stages of the controversy, with the exception of instituting the chancery suit in the superior court and oral arguments in the Supreme Court at which only Mr. Geib appeared, he counseled with and had the assistance of the attorneys of record who represented Thomas Graham and later his estate and also with the attorneys who represented Mrs. Annie Graham. These attorneys for the property owners just above named actively participated in the preparation and trials in the superior court. That substantial results were obtained for the 21 property owners is evidenced by the fact that under the terms of the final decree such property owners secured cash refunds of assessments theretofore paid amounting to $34,169.40 and cancellation of tax liens amounting to $68,340.40.

At the outset it may be noted that in this jurisdiction, in accord with *Trustees* v. *Greenough,* 105 U. S. 527 (26 L. Ed. 1157), the right is recognized to payment of costs, expenses and reasonable counsel fees out of a fund recovered in equity incident to the prosecution of class litigation which has resulted in establishing, preserving or protecting a fund in which the class litigants are decreed rights of participation. In *Becht* v. *Miller,* 279 Mich. 629, 637, we

quoted approvingly from *Buell* v. *Kanawha Lumber Corp.,* 201 Fed. 762, the following:

"The rule is established that where one goes into a court of equity, and takes the risk of litigation on himself, and successfully creates or preserves or protects a fund to a share in which others are entitled, those others will not be allowed to lie back and share the results of these successful labors without contributing their due share, and a court of equity by an equitable extension of the English principle has required the payment out of the fund (before distribution) of the reasonable costs and expenses, including the reasonable counsel fees of the complainant whose diligence created or preserved the fund for distribution."

In the same case we also quoted from 2 R. C. L. p. 954 as follows:

"The creation of the relation of attorney and client by contract express or implied is essential to the right of the attorney to compensation. * * * There must be an agreement express or implied for compensation." (p. 236.)

Following the above quotation we added:

"This proposition has been applied by the courts in cases where one of several interested parties has engaged the services of an attorney. It has been held that the attorney must look to the one who employed him for his compensation even though the others were incidentally benefited by his services and accepted such benefits."

One of the questions presented by this appeal is this: Under the record in this case is the petitioner entitled to be decreed pro rata payment for the services rendered out of the cash refunds decreed to Annie Graham and to the estate of Thomas Graham, deceased? As noted above, each of these two liti-

gants deny that petitioner has such right to be paid for the following reasons: (1) Each of the two was represented throughout this contest by personally retained counsel other than petitioner, and (2) petitioner entered into express agreements that contributions by these two litigants made to and received by him were so received with the understanding and express agreement that the same should be in full of the expenses of litigation to be paid to petitioner by either Annie Graham or the estate of Thomas Graham, deceased.

In so far as the alleged express agreements just above noted are concerned, the record discloses the following. Incident to the first of the two appeals to this Court, Annie Graham paid through her counsel to petitioner $200 towards expenses of the litigation. At the time of the second appeal to this Court and relative to a further contribution by Annie Graham her attorneys wrote petitioner on August 25, 1939, as follows:

"*Dear Mr. Geib:*

"Inclosed please find our check for $200 to apply on our share of $300 to be contributed by our client toward the expenses and attorney fees covering the appeals taken in the refund matter. It is our understanding that Annie Graham's share will not exceed $300 for *the work done and expenses incurred for completing these cases* from this point on to the end."

Mr. Geib's reply to Mrs. Graham's counsel, dated August 25, 1939, reads:

"This is to acknowledge receipt of your check for $200 to apply upon the Annie Graham share of the appeal expenses and attorney fees in the refund appeal matters. * * *

"You are right in assuming the $300 is to cover Annie Graham's share of these expenses. I shall

feel at liberty to call upon you for the remaining $100 sometime later.

> "Thanking you, I am
> Respectfully yours,
> FRED P. GEIB."

On or about December 9, 1939, Mr. Geib requested payment of the balance of the $300. Remittance on December 9, 1939, made by Mrs. Graham's attorneys, mailed to and received by Mr. Geib, was accompanied by a letter which we quote:

*"Dear Sir:*

Inclosed please find check for $100 which is the balance due on the money to be contributed by Annie Graham on the appeal of the M-50 cases to the Supreme Court, as per our previous agreement."

On the oral argument of this appeal Mr. Geib stated that the understanding and arrangement as to contribution to the expenses of this litigation by the Thomas Graham estate was the same as with Mrs. Annie Graham. In the brief filed for him the following statement is made:

"An agreement was made, between Mr. Geib and Annie Graham's counsel, which was verbal, and which is partly stated in the letters referred to. * * * But that agreement was no different than the agreement made at the same time by Mr. Geib with the Smith and the Thomas Graham interests, except that the agreement with them was oral only. * * * This arrangement related to the final appeal to the Supreme Court only. * * * It was, and was intended to be, simply a limitation upon the liability of the three interests for the cost of that appeal. * * * It had and was intended to have, no application to fees in case of success, and that was well known to all interested counsel and well understood by all."

Unfortunately petitioner is not in accord with the attorneys representing Mrs. Annie Graham or counsel for the Thomas Graham estate as to the construction to be placed upon the arrangement or agreement which gave rise to the above-quoted letters. The position of counsel representing these two litigants is expressed in the brief of one of them as follows:

"That there was a binding and legal agreement in writing with Mr. Geib that the $500 contributed by Annie Graham was in full for any costs or attorney fees he might claim by reason of any additional work performed by him in connection with this litigation."

The Thomas Graham estate, having also made voluntary contributions totalling $1,500 towards the expenses and fees of Mr. Geib, takes the same position. On the other hand, as stated in the brief for him, Mr. Geib takes the following position.

"Such advancements were made upon the express agreement that they, with a similar contribution of $600 from the Smith interest were to be in full for services and expenses *upon the appeal,* except that, in case of success, the Court would be asked to fix the fees to be paid out of the fund recovered."

As a witness in the case Mr. Geib testified:

"I did not at any time have any contract or agreement, either orally or in writing, with any of the other parties owning property in that district, outside of Henry Smith, except * * * that in this last suit in case we lost, the amount that each had contributed would be in full for services in that suit; that is, the $1,500 that was put out by these three clients was to be all they were to be called upon to pay in connection with that except in event of success. * * * That proposition that the fees were to be charged against the fund and fixed by the court

in the event that the litigation was successful, was discussed with the other attorneys, * * * that in the event the litigation was successful, the fee should be fixed by the Court.''

The quoted letters must be read in the light of those portions of the record which disclose that from time to time during the progress of this controversy Mr. Geib was repeatedly advised by Mrs. Graham's counsel that she would not be obligated to pay any portion of Mr. Geib's fees other than the voluntary contributions made by her. Mr. Geib does not claim he ever had any express understanding with Mrs. Graham or any one representing her that she should pay him for professional services in this matter or that he would be compensated in part out of her share of the refund recovered. Instead he testified: ''I have never met her to this day. She is a stranger to me.'' And clearly Mr. Geib knew throughout the duration of this litigation that Mrs. Graham was represented by attorneys Linsey, Shivel, Phelps & Vander Wal; and also that the Thomas Graham interests were represented by attorney Cornelius Hoffius who later became circuit judge and thereafter was succeeded by attorney Van Kovering. Mr. Linsey, one of Mrs. Graham's counsel, testified:

''I told Mr. Geib, who talked about fees, I said so far as Mrs. Graham is concerned, she hired us and not him and that she would not pay him anything in the way of fees, that he would have to get his own fees out of his own client.''

Under the circumstances presented by this record we think there is little, if any, occasion for considering the applicability of the numerous decisions which can be found in various jurisdictions bearing upon the right of an equity court to order the payment of counsel fees out of a fund secured or protected in a so-called class litigation. There seems to be no hard

and fast rule; but instead in each case the action of the court in this particular must depend upon the facts and circumstances of that case. Some courts have held respecting the matter of contribution to or payment of attorney fees out of a fund that where a party is represented by his own counsel he will not be called upon to pay counsel appearing in the case for another litigant. *Howard* v. *Carmichael*, 237 Ky. 462 (35 S. W. [2d] 852); *General Finance Corp.* v. *Railways*, 3 Fed. Supp. 975. But contrary holdings can be found. See *Wallace* v. *Fiske* (C. C. A.), 80 Fed. (2d) 897 (107 A. L. R. 726), certiorari denied, 298 U. S. 675 (56 Sup. Ct. 940, 80 L. Ed. 1397); and 107 A. L. R. 749, where there is an informative note on the subject.

The decisions disclose that varying conditions and circumstances have influenced and perhaps controlled courts in the conclusions reached. In some instances, notwithstanding a litigant in a class suit is nominally represented by personal counsel who is inactive in the prosecution of the proceedings, the attorney of another litigant who has taken the laboring oar and has actually rendered the service has been decreed payment out of the fund obtained or preserved by the latter.

"Of course one who has an attorney may be shown to have expressly or impliedly consented to be represented, nevertheless, by the attorneys for other creditors *who alone are active and achieve the beneficial result.* In that event such creditors, notwithstanding they were nominally represented by counsel, should share proportionately in the expense." *Nolte* v. *Hudson Navigation Co.* (C. C. A.), 47 Fed. (2d) 166, 168.

"Where creditors [in a class suit] are represented by counsel of their own choice, *who do in fact act for them,* they cannot be compelled to share in the expenses incurred by the employment of other

counsel by other creditors." *General Finance Corp.*
v. *Railways, supra.*

Other courts have made observations of the
following character.

"It is a matter of every day occurrence in our
courts where two or more are sued, or indicted,
that one party employs one attorney and another
some other, and yet it is not expected, or indeed is
it true, that each of the parties renders himself
liable for the fees of the others because notice is
not given that he is not to be held liable." *Simms*
v. *Floyd,* 65 Ga. 719.

As hereinbefore noted, the creation of the relation
of attorney and client by contract express or implied
is an essential to the right of an attorney to com-
pensation. We conceive an underlying reason for
equity courts decreeing payment of compensation
out of a fund secured or protected by a suit prose-
cuted in behalf of class litigants is that from the
circumstances of the case an implied contract ap-
pears or is inferred, and in consequence of such
implied contract the obligation to pay counsel fees
out of the fund arises.

Our review of this record satisfies us that the
facts and circumstances of the instant case wholly
negative any implied contract on the part of either
Annie Graham or the Thomas Graham estate that
payment towards Mr. Geib's fees or expenses should
be made out of the fund decreed to each of these
two litigants. An express contract is not claimed.
It follows that the portion of the decree entered in
the superior court which in effect provided for pay-
ment in the amount of $5,182.88 out of the fund
recovered for Annie Graham and $8,243.16 out of
the fund recovered for the Thomas Graham estate
in satisfaction of attorneys' fees was erroneous and
must be vacated.

Further, under the circumstances of this case, the trial court was without authority to determine by its decree "that the fair and reasonable value of the services  *  *  *  to be paid by Mrs. Annie Graham to her counsel out of the fund recovered was $3,887.64." There is no controversy between Mrs. Graham and her attorneys as to how or in what amount they shall be compensated. Neither she nor her counsel have sought such an adjudication in these proceedings, but instead they have insisted throughout that this matter was one for private adjustment between the parties concerned. In so far as the decree entered in the trial court provides otherwise, it must be modified.

The situation presented relative to the Thomas Graham estate differs somewhat from that of Annie Graham in the following respect. The answer to Mr. Geib's petition appears to have been made and filed by "Stella Graham and Arent Van Stensel, executrix and administrator c. t. a., respectively of the estate of Thomas E. Graham, deceased." And while in their answer these representatives deny the right of Mr. Geib to secure compensation out of the refund recovered for the Thomas Graham estate, asserting the same reasons as urged by Annie Graham, still these representatives of the Thomas Graham estate conclude their petition as follows: "but they respectively pray that whatever fees to be fixed in this proceeding be in full satisfaction of all fees and expenses for the services of the personal attorney of Thomas E. Graham, said Cornelius Hoffius, and the personal attorney of the representatives of his estate, Russell Van Kovering." As hereinbefore indicated, we are of the opinion that in these proceedings, under the circumstances presented, the status of the Thomas Graham estate is not that of a litigant in class litigation. Instead, Mr. Thomas Graham and later his estate through-

out this litigation have been represented by personally retained counsel who actively participated in the prosecution of their client's interest; and further the testimony in these proceedings clearly negatives any express or implied consent on the part of Thomas Graham or his estate that payment should be made for the professional services of Mr. Geib out of the refund recovered for this estate. Under such circumstances we consider it is not within the jurisdiction of the court in these proceedings to decree the amount of compensation for professional services to be paid by the Thomas Graham estate to the attorneys who have represented it or Mr. Graham in his lifetime. It does not appear that there is any contest or disagreement between these parties as to attorneys' fees. Such compensation should in the first instance be fixed by agreement or upon hearing in the probate proceedings pending in the Thomas Graham estate. It follows that the decree entered in the superior court in these proceedings must be modified in the respect just noted, thereby eliminating the provision of the decree which fixed the amount of the attorney fees payable to counsel who have represented the Thomas Graham estate in the amount of $3,887.64; but this provision should be stricken from the decree without prejudice.

The remaining question for determination is whether the decree entered in the trial court should or should not be modified wherein it provides that Mr. Geib shall be paid as attorney's fees $10,550.72 in addition to compensation in the amount of $5,539.24 previously received by him. As one of his reasons assigned in support of this appeal, Mr. Geib asserts: "The trial court erred in fixing the total fee at a smaller amount than was fair and reasonable under the facts of the case and the applicable law." On the other hand, counsel who rep-

resent the Henry Smith estate as a cross-appellant assert as one of the reasons in support of their appeal: "That the trial court allowed as fees out of the fund recovered in this suit a sum in excess of that which would be fair and reasonable in accordance with local custom and practice in fixing counsel fees," especially ."in view of the limited benefit received by the litigants."

The following facts and circumstances, among others disclosed by the record, have a material bearing on this phase of the appeal. (1) Mr. Geib had no express agreement either with Mr. Smith or with the representatives of the Smith estate as to the amount or rate of compensation he was to be paid. (2) Mr. Geib, with possible uncertain prospects as to the ability of the Smith estate to compensate him in event of an adverse decision, rendered protracted and decidedly commendable services to his client. (3) The compensation of Mr. Geib cannot be fixed on the assumption that it was wholly contingent, because he received $5,000 prior to final determination of the principal litigation—of this amount $3,000 was paid by Mr. Smith or his estate. (4) A final decree was obtained which benefited the Smith estate by refund of highway assessments paid in the amount of $10,721.58 and cancellation of tax liens amounting to $20,352.12, a total of $31,073.70. (5) Incident to the expenses of this litigation Mr. Geib paid substantially $729.31; but after applying costs collected by him the balance incident to expenses paid by him was reduced to approximately $300. (6) As contributions or payments towards the expenses of this litigation Mr. Geib received prior to the decree from which this appeal was taken the following: $3,000 from the Henry Smith estate, $500 from Mrs. Annie Graham, $1,500 from the Thomas Graham estate. He also received one-third

of the total cash refund decreed to the litigants who had lesser amounts involved and who were not represented by counsel. After deducting from this one-third the balance due to Mr. Geib for disbursements, there remained $539.24 which Mr. Geib received to apply on his services. It thus appears that prior to the decree in the superior court Mr. Geib had received $5,539.24 to apply in payment of his professional services rendered in this case.

It would be futile to attempt to detail herein all the contentions of the respective counsel or all of the facts and circumstances disclosed by the record which bear upon this phase of the instant appeal. However, it is somewhat helpful to note that on November 8, 1939, Mr. Geib swore to a claim which he filed in the Henry Smith estate for the services rendered to date. The amount of his claim as sworn to and filed was $8,917.70. He was thereafter paid $500 which would reduce the balance due him on his claim against the estate as of the date noted to $8,417.70. The record on the appeal in the second case brought to this Court in this matter was filed November 9, 1939, and Mr. Geib's brief was filed substantially a month later. It would seem that thereafter the services of Mr. Geib were limited to the argument of that case in the Supreme Court and attention given to incidental matters such as settling the final decree, et cetera. Aside from the services rendered subsequent to November 8, 1939, it is a fair inference from the record that the amount Mr. Geib proposed to charge the Smith estate for all of such services rendered by him was $8,917.70 plus $2,500 which the estate had paid to him prior to November 8, 1939, or a total of $11,417.70. It is evident in rendering this bill Mr. Geib was not relying on a further contribution from either Annie Graham or the estate of Thomas Graham, because

in a note which accompanied his claim against the Smith estate he made the following statement:

"Said estate, however, may be entitled to claim contributions from the estate of Thomas Graham, deceased, and from Annie Graham, by reason of their common interest in the litigation."

In other words, the measure of Mr. Geib's charge against the Smith estate seems to have been fixed by him in the amount of $11,417.70 plus reasonable compensation for services thereafter rendered incident to the second appeal to this Court. While the figures just above noted are not conclusive, still they do throw some light upon how much the Smith estate may equitably be required to pay Mr. Geib.

In asserting his right to have substantial compensation paid to him out of the refund recovered for the Smith estate, Mr. Geib urges that the cancellation of tax liens in the amount of $20,352.12 against the Smith property should be considered the same as the recovery of cash in that amount. This added to the $10,721.58 cash refund decreed to the Smith estate, Mr. Geib claims, makes a total beneficial result of $31,073.70.

The viewpoint of Mr. Geib is criticized and vigorously opposed by counsel who represent the Smith estate in the present proceedings. It is their claim that it would be unjust to the Smith estate to consider the cancellation of the tax liens in the amount of $20,352.12 the equivalent of a recovery of cash in that amount. It is admitted that as of October, 1940, there were still outstanding tax liens against the Smith property to the amount of $9,135.33. Testimony was introduced in behalf of the Smith estate that the actual value of the property was not materially in excess of these still-existing tax liens. Therefore, counsel urge that the cancellation of liens resulting from assessments

for highway improvements in the principal case was not of material benefit to the Smith estate; and they urge that the amount of the attorney's compensation should be fixed on the theory that the only beneficial result to the Smith estate was the cash refund of assessments paid in the amount of $10,721.58. While this phase of the record merits consideration in arriving at the amount of the attorney's compensation, still we are by no means able to accept the argument at full face value. As against the testimony introduced for the purpose of showing there was no substantial equity in the Smith property over and above the still existing tax liens thereon, proof was offered showing this property in 1934 was assessed for taxation at $27,500, and in 1940 at $31,700. On the basis of the 1940 assessed value there was an apparent equity of upwards of $20,000 in this property over and above the then outstanding tax liens. Being the possessor of a valuable equity, the cancellation of other assessment liens in an amount upwards of $20,000 was clearly beneficial to the Smith estate. Further, the major portion, if not all, of the tax liens presently existing against the Smith property resulted from nonpayment of taxes which became due and payable during the period that Mr. Geib was rendering the services for which he now asks compensation. Such default on the part of the property owner is not a very appealing reason for denying compensation to counsel. To hold otherwise would in effect be to ask Mr. Geib to pay the taxes due from the Smith estate. This record conclusively establishes that a beneficial result to the Smith estate accrued from the cancellation of the highway assessment liens.

We are not in accord with the contention made in behalf of the Smith estate that as to *all* property owners involved in these proceedings, it was a class

suit. Instead, for the reasons hereinbefore noted, we are of the opinion that neither Mrs. Annie Graham nor the Graham estate was before the Court in the status of a litigant in a class suit; but we hold otherwise as to those property owners who were not represented by counsel. Nor are we in accord with the contention made both in behalf of Mr. Geib and of the Smith estate that the provision in the final decree entered in this Court by which the suit was referred for further proceedings in the trial court was *res judicata* of the status of each and all the litigants as being parties to a class suit. In the proceedings wherein our decree was entered, this issue was not submitted nor was it mentioned in our decision, and the decree entered must be construed accordingly.

Unfortunately the rights of the parties concerned in this phase of the present proceedings cannot be measured with a yardstick or an avoirdupois nicety. At best only a reasonably fair and equitable result can be hoped to be obtained. While an attorney should be as fully compensated as the circumstances of a given case will permit, still the rights of his client must not be overlooked. Winning a lawsuit without tangible net results is a poor victory for a litigant. Both bench and bar are well aware that sometimes at the conclusion of litigation the result obtained is inadequate to permit payment of what under other circumstances might be termed fair compensation for professional services rendered and at the same time leave some beneficial result for the litigant. We are inclined to view the instant case as one of that character; and under such circumstances the only equitable result obtainable is one midway between two extremes.

After detailed consideration of this phase of the present controversy we are of the opinion that an

equitable result will be obtained if, in addition to the compensation in the amount of $5,539.24 heretofore received by Mr. Geib, it be decreed that he shall be paid as further compensation out of the cash refund obtained for the Smith estate one-third of such refund and that he also be paid from such cash refund an amount equal to one-fifth of the tax liens which were cancelled. In other words, that, as the balance in full of his compensation from the Smith estate, Mr. Geib be paid $7,644.28. In addition to such amount the Smith estate has heretofore paid Mr. Geib $3,000. The result will be a total payment to Mr. Geib by the Smith estate and from the other sources noted for his services in this case somewhat in excess of $13,000.

A decree may be taken in this Court in accordance with the foregoing opinion. Costs of this Court may be taxed against the petitioner by Annie Graham and the Thomas Graham estate; but since neither the petitioner nor the Smith estate fully maintained their respective positions taken on this appeal, no costs will be awarded as between these two litigants.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred.