. PLUNKETT & COONEY, PC v CAPITOL BANCORP LTD

Docket No. 159094. Submitted February 8, 1995, at Lansing. Decided
    July 25, 1995, at 9:00 A.M.

Plunkett & Cooney, P.C., brought an action in the Ingham Circuit
    Court against Capitol Bancorp Ltd. and Capitol National Bank
    of Lansing, seeking legal fees for services rendered by John
    Sharp, a former Plunkett attorney, while he was employed by
    Plunkett. The court, William E. Collette, J., entered a judgment
    for the plaintiff against Capitol Bancorp. Capitol Bancorp ap-
    pealed.

The Court of Appeals *held:*

1. Although Sharp performed the work for Capitol Bancorp,
the employment relationship was between Capitol Bancorp and
Plunkett. Therefore, Capitol Bancorp had a contractual obliga-
tion to pay Plunkett for the services rendered.

2. A client has the right to discharge a lawyer at any time
but is subject to liability for payment for the lawyer's services
rendered before the discharge. Where a fixed-fee agreement
exists, the value of the services that the lawyer has agreed to
render has been established. The value of the lawyer's services
rendered before discharge of the lawyer constitutes the percent-
age of the services that have been completed pursuant to the
contract, multiplied by the contract price where the parties
have not set forth alternative contractual formulas for deter-
mining compensation. It is inappropriate to calculate the value
of the services on the basis of quantum meruit where a fixed-
fee agreement explicitly provides the agreed-upon value of the
services.

3. This matter must be reversed and remanded to allow the
trial court to specifically address the amount of recovery to
which the plaintiff is entitled in light of the principles delin-
eated in this case.

4. The trial court correctly concluded that an investigation
conducted by the Securities Exchange Commission, which

REFERENCES
Am Jur 2d, Attorneys at Law §§ 118, 238, 297.
See ALR Index under Attorney or Assistance of Attorney; Attor-
    neys' Fees.

caused Capitol Bancorp to incur additional legal fees, did not result from Sharp's actions while he was employed by Plunkett. Therefore, Capitol Bancorp is not entitled to a setoff against the amount due Plunkett.

5. The trial court did not err in awarding Plunkett administrative costs charged on Capitol Bancorp's account. Plunkett submitted an itemized bill showing actual costs incurred and Capitol Bancorp presented no evidence to show that the fee agreements were inclusive of these costs.

Reversed and remanded.

1. ATTORNEY AND CLIENT — CONTRACTS.

An attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered.

2. ATTORNEY AND CLIENT — LAW FIRMS.

A client's employment of one member of a law firm generally is deemed to be the employment of the firm itself (MCR 2.117[B] [3]).

3. ATTORNEY AND CLIENT — FIXED-FEE AGREEMENTS — PREMATURE TERMINATION — DAMAGES.

The value of the services that an attorney has agreed to render has been established where a fixed-fee agreement regarding such services exists; although the client has the right to discharge the attorney at any time, the attorney is entitled to recover for the services rendered before the discharge; the value of those services constitutes the percentage of the services that have been completed pursuant to the contract, multiplied by the contract price where the contract does not set forth an alternative contractual formula for determining compensation.

4. ATTORNEY AND CLIENT — FIXED-FEE AGREEMENTS — PREMATURE TERMINATION — DAMAGES.

It is inappropriate to calculate damages on the basis of quantum meruit where a fixed-fee agreement explicitly provides the agreed-upon value of services rendered by an attorney; however, those factors considered in calculating damages on the basis of quantum meruit may be considered in determining what percentage of the services agreed to be performed have been completed by the attorney.

*Deanna E. Hazen* and *Mark McGowan,* for the plaintiff.

*Reid & Reid* (by *John R. Fifarek*), for Capitol Bancorp Ltd.

Before: FITZGERALD, P.J., and TAYLOR and MARKMAN, JJ.

MARKMAN, J. Capitol Bancorp Ltd. (hereafter defendant) appeals as of right from a judgment awarding plaintiff Plunkett & Cooney, P.C. (Plunkett) $36,924.33 plus costs, interest, and attorney fees as compensation for legal services rendered. This appeal concerns a dispute over whether Plunkett is entitled to legal fees for services rendered by John Sharp, a former Plunkett attorney, while he was employed by the firm. We reverse.

Sharp, while affiliated with Plunkett, first met with defendant's president, Joseph Reid, in 1988. The meeting was engendered by a request from Reid to a senior Plunkett shareholder, soliciting interest in providing legal representation. Sharp completed a public stock offering for defendant for a fixed fee. The parties then agreed to a second stock offering (the "little deal") for a fixed fee of $12,000, which was completed while Sharp was employed with Plunkett.

In September 1989, Reid informed Sharp that defendant wished to merge with Portage Commerce Bank via a stock-for-stock exchange and a public stock offering. Although Sharp testified he quoted a fee range of $25,000 to $30,000, Reid testified, and the trial court found, that Reid and Sharp orally agreed to a fixed fee of $28,000 for the transaction. Sharp later found out that the filing would take more time than originally contemplated, but the fee was not discussed further

and defendant was never told it would be higher.[1] While at Plunkett, Sharp filed with the Securities Exchange Commission a Form S-1 pertaining to the stock offering and a Form S-4 pertaining to the stock exchange.

On November 15, 1989, while the two filings were pending with the SEC, Sharp left Plunkett for another law firm. Defendant elected to entrust Sharp with the responsibility for completing the Portage Commerce Bank transaction.

The day after Sharp left Plunkett, the SEC notified Sharp of numerous defects in the S-1 and S-4 filings. Members of defendant's "working group," including Sharp, completed the additional work required by the SEC's comment letter over the next several days. However, the SEC started an investigation shortly thereafter resulting from the fact that the amended S-1 did not disclose that Portage Commerce Bank's capital-to-asset ratio was below ten percent, the minimum percentage required as the result of a side-letter undertaking with the Federal Deposit Insurance Corporation by Portage.

The SEC eventually conducted an extensive investigation because of the failure to disclose the capital-to-asset ratio. Ultimately, the SEC took no action and the work for the S-1 and S-4 finally was completed in July or August 1990.

Defendant paid Sharp over $40,000 for work related to the S-1 and S-4, of which approximately $6800 related to work pertaining to the SEC inves-

---

[1] Under the doctrine of *Rippey v Wilson,* 280 Mich 233; 273 NW 552 (1937), the attorneys would bear a substantial burden in attempting to validate any modification in their favor of a fixed-fee retainer contract after an attorney-client relationship was once established. Given the trial court's unchallenged factual findings following trial to the bench, that there was no agreement to alter the fixed-fee agreement ($28,000) for the merger-related filing with the Securities Exchange Commission, for present purposes we have no occasion to consider whether the requirements of *Rippey* were satisfied.

tigation. All these fees related to services rendered by Sharp in connection with the Portage merger.

Subsequently, Plunkett billed defendant over $16,000 for the "little deal" and over $23,000 for the Portage Commerce Bank transaction, which defendant refused to pay. Although the trial court limited Plunkett's recovery on the "little deal" to $12,000, it ordered defendant to pay Plunkett the sums requested for the Portage Commerce Bank transaction and costs of $1,819.34. On appeal, defendant challenges only the award pertaining to the Portage Commerce Bank transaction and the award of costs.

Defendant argues that whether Plunkett is entitled to any compensation at all is an issue to be resolved between Sharp and Plunkett.[2] Defendant alternatively contends that Plunkett is entitled to only a pro-rata share of the $28,000 fixed fee it paid to Sharp on the basis of the services rendered.

An attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered. *Wylie v City Comm of Grand Rapids,* 297 Mich 365, 373; 297 NW 526 (1941). Generally, a client's employment of one member of a law firm is deemed to be the employment of the firm itself. MCR 2.117(B)(3); 7 Am Jur 2d, Attorneys at Law, § 118, p 188. In this case, although Sharp performed the work for defendant, the employment relationship was with Plunkett. Accordingly, defendant had the contractual obligation to pay Plunkett for services rendered.

Where an attorney's employment is prematurely terminated before completing services contracted for under a contingency fee agreement, the attor-

---

[2] In light of this position, it is unclear why the defendant chose not to interplead Sharp pursuant to MCR 3.603(A)(2) or to file a cross-claim against Sharp.

ney is entitled to compensation for the reasonable value of his services on the basis of quantum meruit, and not on the basis of the contract, provided that his discharge was wrongful or his withdrawal was for good cause. *Morris v Detroit,* 189 Mich App 271, 278; 472 NW2d 43 (1991); *Ecclestone, Moffett & Humphrey, PC v Ogne, Jinks, Alberts & Stuart, PC,* 177 Mich App 74, 76; 441 NW2d 7 (1989); *Ambrose v Detroit Edison Co,* 65 Mich App 484, 488-492; 237 NW2d 520 (1975).

The rationale for using a quantum meruit basis for recovery in these cases, rather than the amount provided for in the contingency fee agreement, was first announced in *Ambrose, supra.* In adopting this rule, *Ambrose* relied on *Fracasse v Brent,* 6 Cal 3d 784; 100 Cal Rptr 385; 494 P2d 9 (1972). *Fracasse* examined the issue whether an attorney discharged without cause could recover as damages the full fee specified in the contract of employment. *Fracasse* held that an attorney was not entitled to recover the full contract price and was limited to collecting only a quantum meruit recovery for the reasonable value of the services rendered. *Id.* at 786. *Fracasse* reasoned that since a client has an absolute right to discharge an attorney, the discharge is not a breach of contract.[3] It would therefore be unjust to hold the client liable in damages in the amount of the full contract price for exercising that basic implied right. *Id.* at 791.

An attorney's right to compensation under a fixed-fee agreement where the attorney is prematurely terminated is surprisingly an issue of first

---

[3] The right of the client to discharge counsel is an implied term of the contractual attorney-client relationship. MRPC 1.16(a)(3). However, the client is liable to compensate the attorney for services rendered to the date of discharge. *Genrow v Flynn,* 166 Mich 564; 131 NW 1115 (1911); *Law Offices of Stockler, PC v Semaan,* 135 Mich App 545, 550; 355 NW2d 271 (1984).

impression in Michigan. As discussed, *supra,* a client has a right to discharge a lawyer at any time. However, the client is subject to liability for payment for the lawyer's services. Where a fixed-fee agreement exists, the value of the services that the attorney has agreed to render has been established. However, in light of the client's implicit right to discharge the attorney, the attorney is not entitled to recover the entire contract price. Instead, the attorney is entitled to recover for the services rendered before the discharge. The value of those services constitutes the percentage of the services that have been completed pursuant to the contract, multiplied by the contract price.[4]

It is inappropriate to calculate damages on the basis of quantum meruit where a fixed-fee agreement explicitly provides the agreed-upon value of the services. In fact, most, if not all, of the factors that may be considered in determining the reasonable value of fees on the basis of quantum meruit will have been inherently incorporated in the contract price.

In *Morris, supra* at 279, this Court enumerated several nonexclusive factors appropriately considered for a determination of the reasonable value of fees on the basis of quantum meruit:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

These factors appropriately may be considered in

---

[4] Obviously, this rule would apply only where an attorney and client have not set forth alternative contractual formulas for determining compensation. Further, attorneys remain subject to the Michigan Rules of Professional Conduct as well as applicable provisions of law. See, for example, MRPC 1.5.

determining what percentage of the services agreed to be performed have been completed by the attorney. However, these factors most likely also will be reflected in the contract price. Where a fixed-fee agreement exists, the ultimate question is only what percentage of the total work has been completed. The answer will involve a factual determination based on the circumstances of the case.

We agree that the client should not be responsible for the entire contract price in situations of early termination. However, we similarly find it inappropriate to ignore the agreement between the parties or even to find the contract price to be a mere factor in determining the amount that the attorney is entitled to be compensated. We believe that a calculation based on quantum meruit would in many cases reach the same result as the method of calculation set forth in this opinion. See, for example, *Morris, supra.* Nevertheless, there may be circumstances in which a client may be forced to pay more under quantum meruit where, for example, more work or time than originally anticipated is required to complete the services under the contract. Concomitantly, there may be circumstances in which an attorney may be forced to accept less under quantum meruit where, for example, less work or time than originally anticipated is required to complete the services under the contract. We find that the approach set forth in this opinion more appropriately respects the contract agreed to and bargained for by the parties while still preserving the right of a client to discharge an attorney.[5]

---

[5] We are aware of the potential inconveniences and burdens with which a client may be faced where the attorney predominantly involved in his case leaves the law firm handling the matter. Attorneys should seriously consider assisting their clients to minimize such burdens, which are no fault of the client. For instance, Plunkett could have provided notice to the defendant that it was claiming separate

In this case, the trial court indicated that the parties agreed to a maximum of $28,000 but then awarded $23,105, stating that this was the "value" of Plunkett's services. We remand in order for the trial court to specifically address the amount of recovery in light of the principles delineated in this opinion.

Defendant also contends that it is entitled to a setoff from the amount owed Plunkett because Sharp's negligence in filing the original SEC documents and amendments resulted in the SEC investigation and caused defendant to incur additional legal fees of over $6,000, lost profits of $63,000, and other additional expenses. However, we find that the trial court correctly concluded that the investigation did not result from Sharp's actions while he was employed by Plunkett. Accordingly, defendant was not entitled to a setoff against the amount due Plunkett.

Defendant further argues that the trial court erred in awarding Plunkett administrative costs charged on the account. We disagree. Plunkett submitted an itemized bill showing actual costs incurred. Defendant presented no evidence to show that the fee agreements were inclusive of these costs.

Reversed and remanded for a determination by the trial court consistent with this opinion. We do not retain jurisdiction.

entitlement to some portion of Sharp's legal fees. Instead, Plunkett did not submit a bill for the Portage-related services until *after* defendant had paid the full fee to Sharp. Plunkett (as well as Sharp) failed to assist defendant reasonably and thus substantially contributed to the need for this litigation in the first place. Nevertheless, the client, as a party to the contract, has responsibilities in this situation as well and Plunkett remains entitled to compensation under the fixed-fee agreement. Of course, defendant has recourse against Sharp for amounts paid to him that properly should have been paid to Plunkett.