CRARY v. GOLDSMITH.

1. DRUNKARDS—GUARDIANS—COMMITMENT—COMPETENCY TO TRANS-ACT BUSINESS.

A person for whom a guardian is appointed and who has been committed as an habitual drunkard is still deemed mentally and legally competent to contract and transact his business affairs in his own behalf (2 Comp. Laws 1929, § 6885, as last amended by Act No. 104, Pub. Acts 1937; Act No. 288, chap. 3, § 1, par. 6, Pub. Acts 1939).

REFERENCES FOR POINTS IN HEADNOTES

[1] Validity of contracts made with habitual drunkards. 54 L.R.A. 449.
[5] 5 Am. Jur., Attorneys at Law, § 190.
[7] 5 Am. Jur., Attorneys at Law, § 198.
[8] 5 Am. Jur., Attorneys at Law, § 153.
[13] Amount of attorney's compensation in absence of contract or statute fixing amount. 143 A.L.R. 672.
[14] 14 Am. Jur., Costs, § 10.
[15] 14 Am. Jur., Costs, § 97.

2. SAME—DISCHARGE AS DRUNKARD—MENTAL INCOMPETENCY—EFFECT OF ORDERS.

An order adjudging a drunkard as a person no longer addicted to the use of intoxicating liquors and releasing him from further control as such has no effect upon order adjudging him a mentally incompetent person which had been entered after order adjudging him to be a drunkard had been made (Act No. 288, chap. 3, § 1, pars. 4, 6, Pub. Acts 1939).

3. ATTORNEY AND CLIENT—VALUE OF SERVICES—EVIDENCE.

In suit to have an assignment of dividends on stock set aside and value of defendant attorney's services for plaintiff ward determined, claim on part of latter that such defendant was to receive only $300 and some expenses for obtaining ward's release from State mental hospital where he had been committed as a drunkard *held,* without merit, in view of evidence showing payment of $100, transfer of an automobile and assignment of dividends (Court Rule No. 4 [1945]).

4. SAME—VALUE OF SERVICES—RECORD.

In suit to determine value of defendant attorney's services rendered to plaintiff ward in latter's efforts to obtain release from State mental hospital where he had been committed as an habitual drunkard, evidence *held,* to support conclusion that there was no definite agreement between such plaintiff and that defendant as to amount latter was to receive for his services and expenses.

5. SAME—CONTRACTS—VALUE OF SERVICES—BURDEN OF PROOF—EQUITY.

Where there is no definite agreement between an attorney and client as to the amount to be paid for services and expenses, the burden of proof rests on the attorney to establish the reasonableness of his charges, a matter not determinable in a suit at law (Court Rule No. 4 [1945]).

6. APPEAL AND ERROR—CHANCERY CASE—DE NOVO REVIEW—RECORD.

A suit to enjoin payment under an assignment and to determine reasonableness of attorney fees, being a chancery case, is reviewed by the Supreme Court *de novo* on the record submitted.

7. ATTORNEY AND CLIENT—VALUE OF SERVICES RENDERED.

In determining the reasonableness of an attorney's charges, the court takes into consideration the skill and experience called for from the attorney, the character of the services rendered, the importance of the case, the time spent and expenses incurred and the results accomplished.

8. SAME—REASONABLENESS OF CHARGES.

The reasonableness of the charges for services by one attorney cannot be measured by what some other attorney would charge as there is no universal yardstick for measuring the reasonableness of charges for services of all attorneys, the aim of a court being to reach a reasonably fair and equitable result.

9. SAME—COMPENSATION.

While an attorney should be as fully compensated as the circumstances of a given case will permit, the rights of his client must not be overlooked.

10. SAME—DRUNKARD COMMITTED TO MENTAL HOSPITAL.

Where an attorney's client is a patient in a State mental hospital to which he was committed as an habitual drunkard, the confidential relationship involved calls for the exercise of the utmost good faith and fair dealing by the attorney.

11. SAME—BAD FAITH—EVIDENCE.

Claim, advanced in bill of complaint seeking, among other things, determination as to reasonableness of attorney's charges for services rendered, that he had fraudulently obtained money and property from his client, then detained as a drunkard in a State mental hospital, in bad faith *held*, unsupported by record.

12. SAME—UNSUCCESSFUL RESULTS—AMOUNT OF COMPENSATION FOR SERVICES RENDERED IN GOOD FAITH.

Where services, rendered to client by attorney were abortive and failed to accomplish the desired result, were performed faithfully and intelligently and in good faith, he is not to be deprived of all compensation for services rendered although the amount thereof would be affected by results obtained.

13. SAME—FEES.

Fee for attorney in various unsuccessful proceedings in behalf of client who had been committed as a drunkard to a State mental hospital to obtain his release therefrom for which he had already received money or property valued at $1,326.70, is fixed at $1,500 in addition thereto, where attorney has practiced law about 12 years and claimed he had spent a total of 700 hours in office work, preparing briefs and records, traveling, and in court.

14. COSTS—TRIAL COURT—WITNESS FEES.

Where both guardian and ward sought to restrain defendant attorney from obtaining funds under ward's assignment of funds to be received from a corporation in excess of a reasonable

attorney fee for services theretofore rendered ward, and were successful in trial court, plaintiff guardian is entitled to witness fees and costs in the trial court.

15. SAME—APPEAL BY BOTH PARTIES.

In controversy over attorney fees where attorney appealed and client cross-appealed but each prevailed only in part, no costs of suit are awarded in the Supreme Court.

Appeal from Jackson; Arch (Charles O.), J., presiding. Submitted June 9, 1948. (Docket No. 27, Calendar No. 44,103.) Decided October 4, 1948.

Bill by DeLand Crary, guardian of the person and estate of Neal. K. Potter, against Irving W. Goldsmith and another to restrain an action at law to have an assignment declared void and to fix amount of attorney's fees. Decree for plaintiff. Defendant Goldsmith appeals. Plaintiff cross-appeals. Decree fixing attorney's fees and cancelling assignment entered.

*Robert Crary,* for plaintiff.

*Siler Freeman* (*Meyer D. Stein,* of counsel), for defendant Goldsmith.

BOYLES, J. On October 16, 1944, DeLand Crary, as guardian of the person and estate of Neal K. Potter, filed the instant bill of complaint in chancery asking that the defendant Goldsmith be enjoined from proceeding with an action at law against the defendant corporation, that said corporation be restrained from honoring a purported assignment or paying the defendant Goldsmith any funds of the plaintiff Neal K. Potter, that said assignment be declared to be void, that the amount of attorney fees to which the defendant Goldsmith was entitled for representing Neal K. Potter be determined by the court under Court Rule No. 4 (1945), and that the

defendant Goldsmith be required to account for any property or money received by him in excess of the reasonable value of his services as attorney for Neal K. Potter, as determined by the court.

Issue was joined by the filing of separate answers by the defendants, and after taking testimony the circuit judge entered a decree setting aside and cancelling the assignment whereby Neal K. Potter had assigned to Goldsmith the income from his holdings in the defendant corporation, directing the defendant corporation to pay to plaintiffs the money held by it represented by said assignment, and decreeing that the money and property already received by the defendant Goldsmith was a reasonable payment for the services he had rendered for Neal K. Potter. The decree also fixed certain expert witness fees at $50 and directed the defendant Goldsmith to pay the same to the plaintiffs, together with other costs of suit.

From this decree the defendant Goldsmith appeals, and the plaintiffs cross-appeal. Defendant Goldsmith claims that the assignment was legal, that there was an express contract for his fees and that the assignment should not have been set aside. The plaintiffs on cross appeal claim that there was a contract to pay Goldsmith $300 for his services and that it should control.

On December 9, 1941, a petition was filed in the probate court for Jackson county alleging that Neal K. Potter was an habitual drunkard and so addicted to the use of intoxicating liquors as to need institutional treatment and care. Proper proceedings were had on this petition resulting in the appointment on December 15, 1941, of one George H. Turner as guardian of the person of Neal K. Potter, under the provisions of Act No. 288, chap. 3, § 1, par. 6, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–3

[1], Stat. Ann. 1943 Rev. § 27.3178 [201]*) (probate code).

Thereupon the probate court, on the petition of said guardian and on proper proceedings, on December 15, 1941, ordered Neal K. Potter admitted to the Ypsilanti State hospital as a person addicted to the excessive use of intoxicating liquors, by virtue of the provisions of 2 Comp. Laws 1929, § 6885, as last amended by Act No. 104, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 6885, Stat. Ann. 1947 Cum. Supp. § 14.808).

On August 11, 1943, an order was entered by said probate court *in the above matter* removing George H. Turner as guardian of the person of Neal K. Potter as a person addicted to the excessive use of alcoholic liquors, for the reason that said guardian was no longer a resident of this State. The order further recited that Neal K. Potter was still a patient in the Ypsilanti State hospital, and appointed DeLand Crary as guardian of his person, under the provisions of the aforesaid proceedings. DeLand Crary qualified by filing a bond in the sum of $25 and received authority in accordance therewith.

None of the above proceedings adjudged Neal K. Potter to be a mentally incompetent person, nor did said proceedings appoint a guardian of the estate of Neal K. Potter as a mentally incompetent person. The above proceedings for appointment of guardian were under chapter 3, § 1, par. 6 of the probate code, *supra,* and not under the provisions of paragraph 4 of said section which refers to an adjudication of mental incompetence and the appointment of a guardian of a person adjudged to be mentally incompetent to have the care, custody and management of his estate. In so far as the above proceed-

---

* The amendment by Act No. 324, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 16289–3[1], Stat. Ann. 1947 Cum. Supp. § 27.3178 [201], has no bearing.

ings in probate court affected his status, Neal K. Potter was still mentally and legally competent to contract and transact his business affairs in his own behalf.

On November 16, 1943, the probate court of Jackson county, upon a proper petition and after due notice and hearing thereon, entered an order adjudging Neal K. Potter to be mentally incompetent to have the care, custody and management of his person and estate, and appointing DeLand Crary as general guardian of the person and estate of said mentally incompetent person. Crary qualified by filing a bond for $12,000 and on December 4, 1943, received from the court letters of such guardianship. The above proceedings in probate court and the order entered therein were under the provisions of chapter 3, § 1, par. 4, of said probate code, *supra* (Comp. Laws Supp. 1940, § 16289–3 [1], Stat. Ann. 1943 Rev. § 27.3178 [201]). Said appointment of general guardian is still in full force and effect, and Neal K. Potter is still under such disability, dating from the entry of the said order November 16, 1943.

A subsequent order of said probate court, entered May 17, 1944, adjudging Neal K. Potter as no longer a person addicted to the use of intoxicating liquors and releasing him from further control as such, has no effect upon the order adjudging him to be a mentally incompetent person, under chapter 3, § 1, par. 4, of the probate code, *supra*. There is no claim that the adjudication of mental incompetence and the appointment of DeLand Crary as guardian, in November, 1943, is void, nor any claim that the order entered May 17, 1944, has any effect on the legality of said appointment. The gist of the controversy here concerns the amount to which the defendant Goldsmith is entitled for his services and expenses as attorney for Neal K. Potter, in attempting to obtain his release from the Ypsilanti State hospital.

The events which we are about to relate occurred before Neal K. Potter was adjudged to be a mentally incompetent person.

It is conceded that in August, 1942, Potter retained the defendant Goldsmith for that purpose and at that time he paid Goldsmith $100. He testified:

"I entered into a bargain with him respecting his fees. The fees would be $300, plus the cost of medical services and an alienist consultant. The approximate cost of the alienist was to be about $50 or $75. Pursuant to that arrangement, I authorized Mr. Loveland, an attorney in Jackson, Michigan, to give Mr. Goldsmith a retainer of $100. Mr. Goldsmith acknowledged receiving the $100. Subsequently, he asked me to give him additional money. The next instance was, in my memory, at the time of preparing the Supreme Court brief. He asked me what I had that was liquidable and I mentioned the Nickel stock and the automobile. I turned over to him the Nickel stock. It was for the original purpose for which I hired him; to get my release. He said that he wanted this additional money because there were additional expenses involved in the preparation of that case before the Supreme Court. At the same time, he asked me for the automobile. He was to get the automobile and get quotations on its value from several dealers in Detroit and the average of those quotations would be used as a basis for value. The original understanding was that he was to hold the proceeds of the sale of the car to pay what additional expenses might be necessary. All this time, I was confined at the Michigan State hospital at Ypsilanti. My prime and sole purpose was to get out of there. I remember them coming to me with an assignment for $4,000 of the moneys which I might receive as dividends from the Sheet Aluminum Corporation. They told me it was for additional expenses involved in preparing the Supreme Court case."

Thus Neal K. Potter freely admits that he "turned over" to Goldsmith the Nickel stock, an automobile, and signed an assignment of his dividends from the defendant Sheet Aluminum Corporation to the extent of $4,000. Plaintiffs do not claim any formal defects in the transfers of the Nickel stock, the automobile, or in the assignment of dividends of the Sheet Aluminum Corporation. On their face, these transactions are legal. Under the above circumstances, there is no merit in plaintiffs' claim that there was an agreement for Goldsmith to receive only $300 plus some expenses, and no more.

The defendant Goldsmith testified that he had practiced law about 12 years, his office being in the National Bank Building, Detroit; that he first talked with Mr. Potter in 1942 at the Ypsilanti State Hospital in response to a letter from him; that he had received $100, Nickel stock worth $576.70, and an automobile with a market value of $650, a total of $1,326.70. The record shows that he carried on a proceeding in habeas corpus and certiorari in Washtenaw circuit court, a similar proceeding in this Court (*In re Potter,* 305 Mich. 536), an attempt to have review in the United States supreme court, in all of which he was unsuccessful. He employed other counsel to assist, made numerous trips to the Ypsilanti State hospital, the probate court in Jackson, the circuit court in Ann Arbor, and to Lansing. He testified that before he tried the habeas corpus case in Ann Arbor he had an agreement to receive $1,000 from Mr. Potter. He claimed that in representing Mr. Potter he had worked a total of 700 hours, in office work, preparing briefs and records, traveling, and in court. He testified:

"For the $1,000 I was to get him out if I could. We made no bargain about the fees. I told him what the price would be.

*"Mr. Crary:* You told me that you made several arrangements for various sums. One for $100 retainer, then $1,000 and the next one?

*"Mr. Goldsmith:* The next time we discussed the value of the services and made a final fee was after the Supreme Court beat me the first time. We finally decided that I would see the whole thing through for $5,000. That was after the Supreme Court beat me the first time and before the second hearing of the Supreme Court. For this $5,000 which was to be the total fee, I was to continue my efforts, the ultimate of which was to get him out of the hospital. That is what I proposed to do the first time. We made one bargain for $1,000 and another bargain for $5,000 for the same thing. * * * Between the first appeal to the Supreme Court and the second, I finally agreed with Mr. Potter that there was a balance due me in the sum of $4,000. On December 17, 1942, I received an assignment from Mr. Potter setting forth this indebtedness to me and the manner of payment."

It is a fair conclusion from the record that there was no definite agreement between Potter and Goldsmith as to the amount Goldsmith was to receive for his services and expenses. If, as Goldsmith first testified above, they finally "decided" that he would "see the whole thing through" for $5,000, the balance due him would not be $4,000. Before the assignment was given, December 17, 1942, he had already received $1,326.70, and the balance due him would then be only $3,673.30. Correspondence between Potter and Goldsmith in the record shows an intimate, personal nature in their relationship, and the confidence and trust which Potter placed in his attorney. Potter testified that:

"All this time, I was confined at the Ypsilanti State hospital at Ypsilanti. My prime and sole purpose was to get out of there."

When asked whether he complained of being cheated, he testified:

"May I say that one in the situation I was in, you don't complain of things."

In view of our conclusion that there was no definite agreement between Potter and Goldsmith as to the amount to be paid for services and expenses, the burden of proof rests on the attorney to establish the reasonableness of his charges. This could not be accomplished in the suit at law.

The bill of complaint in this case challenges the legality of the assignment by Potter of $4,000 to be paid by the defendant corporation to Goldsmith for attorney services and expenses. The bill invokes the jurisdiction of the Court to determine the reasonableness of the attorney's charges, under Court Rule No. 4, *supra*. This being a chancery case, this Court reviews the same *de novo*, on the record submitted. We take into consideration the skill and experience called for from the attorney, the character of the services rendered, the importance of the case, the time spent and expenses incurred, and the results accomplished. The reasonableness of the charges for services by one attorney cannot be measured by what some other attorney would charge. There is no universal yardstick which can be used to measure the reasonableness of charges for services of all attorneys, comparing one with another. In *Wylie* v. *City Commission of Grand Rapids*, 297 Mich. 365, a bill in chancery was filed, one of the questions involved on appeal in this Court being the fixing of attorney fees for one of the attorneys in the absence of any express agreement as to the amount or rate of compensation he was to be paid. Mr. Justice NORTH, writing for the Court, said, p. 386:

"Unfortunately the rights of the parties concerned in this phase of the present proceedings cannot be measured with a yardstick or an avoirdupois nicety. At best only a reasonably fair and equitable result can be hoped to be obtained. While an attorney should be as fully compensated as the circumstances of a given case will permit, still the rights of his client must not be overlooked."

Nor can we overlook the fact that while Potter was not then under the disability of a general guardianship of his person and estate, he was in confinement in the Ypsilanti State hospital under circumstances which might indicate some mental handicap. There was a confidential relationship between this client and his attorney which under these circumstances called for the exercise of the utmost good faith and fair dealing by the attorney. The bill of complaint charges the defendant Goldsmith, upon information and belief, with having improperly and fraudulently obtained money and property from his client, in bad faith. The record does not support the claim. But the reasonableness of the charges made by Goldsmith for his services does not depend upon proof of fraud or bad faith. It is true that the efforts of the attorney were abortive and failed to accomplish the desired result. While this cannot operate to deprive an attorney of compensation for services faithfully and intelligently performed, in good faith (*In re Freshour's Estate,* 174 Mich. 114 [45 L. R. A. [N. S.] 67, Ann. Cas. 1915A, 726]), it does have a hearing on the amount of compensation for the services rendered.

"Winning a lawsuit without tangible net results is a poor victory for a litigant. Both bench and bar are well aware that sometimes at the conclusion of litigation the result obtained is inadequate to permit payment of what under other circumstances might be termed fair compensation for professional serv-

ices rendered and at the same time leave some beneficial result for the litigant. We are inclined to view the instant case as one of that character; and under such circumstances the only equitable result obtainable is one midway between two extremes." *Wylie* v. *City Commission of Grand Rapids, supra,* 386.

We conclude that the defendant Goldsmith should be allowed $1,500 compensation for services in addition to the $1,326.70 already received. A decree may be entered in this Court to that effect, requiring the defendant Sheet Aluminum Corporation to pay to Goldsmith for the. account of Neal K. Potter $1,500 out of the moneys in its possession covered by the assignment, upon the payment of which said assignment shall be considered cancelled and void. The decree will also require the defendant Goldsmith to pay the plaintiff guardian $91.60 witness fees and costs of suit in the court below, and permanently enjoin the suit at law. Each party having prevailed in this Court only in part, no costs of suit awarded in this Court.

Bushnell, C. J., and Sharpe, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.