*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FOUAD DABAJA,

      Plaintiff/Counterdefendant-Appellee,

v

CANTON DEVELOPMENT LLC,

      Defendant,

and

ALI AMINE BEYDOUN,

      Defendant/Counterplaintiff,

and

HOUSSAM BEYDOUN,

      Defendant-Appellant,

and

BRUCE ROSENTHAL and ROBERT FICANO,

      Appellees.

UNPUBLISHED
September 18, 2025
9:42 AM

No. 370853
Wayne Circuit Court
LC No. 19-000407-CB

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

PER CURIAM.

Appellant appeals as of right the trial court's order adopting the Special Master's recommendations and awarding $171,600 in attorney fees to appellees. We affirm.

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns a dispute regarding attorney fees arising out of appellant's underlying litigation against Fouad Dabaja. Appellees represented appellant in the underlying litigation for four-and-a-half years. During this time, they never sent appellant an invoice for their legal services. After appellant received a beneficial payout in the underlying litigation, appellees filed a notice of their charging lien for their fees. Appellant and appellees' relationship soured, and appellees ultimately petitioned the trial for $248,775 in attorney fees. In support of their petition, appellees provided a billing schedule they constructed after-the-fact, as they had not kept contemporaneous time records throughout the underlying litigation.

Appellant objected to appellees' sought fees, arguing that he had paid appellees roughly $150,000 for their services over the course of the underlying litigation. In support of this claim, he provided copies of checks to appellants, as individuals. The memo lines of the checks varied— some were blank, some said "legal fees" or "lawyer fees," and some said "2740 Beech." Appellees claimed the checks were part of an installment buyout agreement for their membership interests in SBR Holdings, LLC (SBR). SBR was created to obtain a special use permit for a piece of land— 2740 Beech Daly Road—appellant owned that he wanted to turn into a marijuana cultivation facility. Appellees explained that, in lieu of paying them for their representation in the matter, appellant granted them each a 1/3 membership interest in SBR. Once it became apparent it was profitable to sell the land, however, appellees alleged appellant approached them and asked to buy out their interests. They presented a Membership Interest Purchase Agreement (MIPA) memorializing the buyout. The majority of the MIPA was typed, but one page was handwritten, and reflected an installment payment schedule for appellant to buy out appellees' interests—three $50,000 installments over the span of a few months. The bottom of the handwritten portion reflected signatures from appellees and appellant.

With the consent of the parties, the trial court appointed a Special Master to hear the parties' arguments, who later issued a report and recommendation. He noted that the evidence presented reflected that appellees provided appellant with their services in getting the special use permit for SBR, and that appellant offered no explanation for why appellees would undertake such efforts without any expectation of payment. Additionally, while "none of the pieces concerning the reasons for the payment of the $150,000 fit perfectly[,]" the Special Master reasoned that (1) "the timing of the [check] payments closely correspond[ed] with the handwritten terms of the Agreement[,]" and (2) it was "undisputed that the petitioners never presented [appellant] with a billing invoice in the Canton litigation until *this* year[,]" making it "hard to conceive that the checks discussed were made in payment for the Canton litigation—especially since the first two checks issued reflected that they were *for* the '2740 Beech Daly' property." Given these facts, the Special Master believed the checks were not for payment in the underlying litigation, and appellant was not entitled to deduct that amount from what he owed appellees.

Regarding the reasonableness of appellees' sought fees, the Special Master noted their billing schedule was not made from contemporaneous records, but was instead "created" years after they had performed much of the work for which they sought to be paid. The Special Master determined that appellees' invoice was unreliable and incredible, but recognized that appellees served as lead defense counsel in the underlying litigation for a lengthy period. As such, while appellees should bear the risk of loss for their failure to contemporaneously document their time,

it should not be "an *entire* loss." To determine the amount of time appellees spent on the underlying litigation, the Special Master took testimony from multiple attorneys, including opposing counsel, regarding the work that was done, and ultimately found that the 572 hours documented by opposing counsel in the underlying litigation "serve[d] as a reasonable proxy for effort that a lead lawyer in the [underlying] litigation would expend." Appellees' hourly billing rate of $300 per hour was uncontested. As such, the Special Master recommended the trial court award appellees $171,600 in attorney fees.

The trial court held an evidentiary hearing itself after the Special Master issued his report. Appellant provided an expert witness at this hearing—but not at the Special Master hearing—who testified that the signature on the MIPA did not belong to appellant, even if, as appellees contended, it was signed on the hood of a car and not a flat surface. The trial court, adopting the findings and conclusions of the Special Master, awarded appellees $171,600 in attorney fees, reasoning the Special Master's use of opposing counsel's hours to estimate appellees' actual time spent was reasonable. The trial court agreed with appellant's expert that the signature on the MIPA did not match his other exemplar signatures, but reasoned that it did "not follow from that conclusion that [appellant] did not sign the document on the hood of the car (pressure and surface) as testified to in the record before the master." It emphasized its focus on appellant's conduct over his words, and that his conduct was "far more consistent with fulfillment of the agreement than it is in payment of attorney fees, of which there is scant and incredible evidence." Appellant now appeals.

## II. STANDARDS OF REVIEW

"We review a trial court's award of attorney fees and costs for an abuse of discretion." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. "A trial court necessarily abuses its discretion when it makes an error of law." *Id*.

On the other hand, we review a trial court's factual findings for clear error. *Midwest Valve & Fiting Co v Detroit*, 347 Mich App 237, 257; 14 NW3d 826 (2023). "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with a definite and firm conviction that a mistake has been made." *Lehman Inv Co, LLC v City of Village of Clarkston*, 347 Mich App 736, 747; 16 NW2d 584 (2023) (quotation marks and citation omitted).

## III. OPPOSING COUNSEL'S HOURS AS PROXY

Appellant argues the trial court abused its discretion by awarding attorney fees to appellees because they failed to keep contemporaneous records, rendering their billing schedule incredible, and the use of opposing counsel's hours was improper. We disagree.

Appellant relies upon *Montgomery v Kraft Foods*, unpublished opinion of the United States District Court for the Western District of Michigan, issued March 2, 2015 (Case No. 1:12-cv-00149), in support of his argument that the use of opposing counsel's hours as a proxy was improper. Notwithstanding the fact that this case is not binding on this Court, see *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004), the majority of the discussion in this case concerns the appropriateness of using opposing counsel's *hourly rate* as a proxy, not *hours*. *Montgomery*, unpub op at p 3. Indeed, the only binding, Michigan authority cited by appellant,

*Crary v Goldsmith*, 322 Mich 418, 428; 34 NW2d 28 (1948), concerned the use of another attorney's *hourly rate* as a proxy, not *hours*.

Appellant then cites cases from federal courts and other state courts, which noted that "[t]he amount of hours that [are] needed by one side to prepare adequately may differ substantially from that for opposing counsel, since the nature of the work may vary dramatically." *Johnson v Univ College of Univ of Alabama in Birmingham*, 706 F2d 1205, 1208 (1983). See also *Mirabel v Gen Motors*, 576 F 2d 729 (CA 7, 1978); *In re Nat'l Lloyds Ins Co*, 532 SW 3d 794 (Tex, 2017). Again, notwithstanding the fact that these cases are not binding, *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020), appellant does not support his claim. While appellant argues that appellees *could have* spent more or less time on the underlying litigation than opposing counsel, he provides no evidence that this was actually the case. The only fact appellant cites is that appellees had the help of another attorney, who represented the other defendant in the underlying litigation, to lighten the load of their responsibilities in the case. But appellant fails to quantify the effect of this attorney's presence, and the trial court found that the attorney's testimony that he played a secondary role to appellees supported a finding that appellees spent roughly the same amount of time as opposing counsel—another lead attorney—on the case.

Appellant points to no authority indicating that Michigan law requires that attorneys keep contemporaneous records. Indeed, this Court has recognized that contemporaneous records, while important in determining the reasonableness of an attorney's requested fees, are not mandatory:

> The most useful starting point for determining the amount of a reasonable attorney fee is the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. The party seeking the fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. . . . While such [contemporaneous billing] records are not required to be kept, in demanding a large sum of attorney fees the lack of contemporaneous time records leaves room for doubt regarding the reasonableness of the hours expended. Where the opposing party challenges the reasonableness of the requested fee, the trial court should hold an evidentiary hearing regarding the issue. If any of the underlying facts, such as the number of hours spent in preparation, are in dispute, the trial court should make findings of fact regarding the disputed issues. [*Olson v Olson*, 256 Mich App 619, 636; 671 NW2d 64 (2003), quoting *Howard v Canteen Corp*, 192 Mich App 427, 437-438; 481 NW2d 718 (1991), overruled on other grounds by *Rafferty v Markovitz*, 461 Mich 265; 602 NW2d 367 (1999) (ellipses and alterations in *Olson*).]

Here, the Special Master did exactly that; he conducted a lengthy hearing during which several witnesses were placed under oath. The trial court subsequently held another evidentiary hearing at which it independently heard from additional witnesses placed under oath. See *id*. As both the Special Master and the trial court recognized, appellees' failure to keep contemporaneous records did not negate the "undisputed evidence" that appellees provided legal services for appellant in the lengthy, complex underlying litigation. We are particularly persuaded by the fact that the trial court presided over the underlying litigation, and was therefore able to personally evaluate appellees' contributions to the case. This, coupled with the testimonies of the other attorneys who explained the extent of appellees' participation in relation to opposing counsel and

the other defendant's counsel, was sufficient to support the trial court's finding that appellees spent roughly the same amount of time on the underlying litigation, overall, as opposing counsel. As such, the trial court's fee award was not outside the range of reasonable and principled outcomes. *Pirgu*, 499 Mich at 274.

## IV. CHECKS AS PAYMENT

Appellant next argues that the trial court erred by determining that the roughly $150,000 in checks paid to appellees was to buy out their membership interests in SBR. We disagree.

Appellant first seems to take issue with the fact that the Special Master, and, by extension, the trial court, failed to determine the credibility of the witnesses, instead choosing to weigh the circumstantial evidence as to which side was more likely. Appellant does not explain why the decision to weigh the evidence to see which party's theory is more likely is somehow erroneous. Furthermore, the trial court did address appellant's expert's credibility when it noted with which portions of his testimony it agreed and disagreed, and this Court gives "particular deference to the trial court's superior position to determine witness credibility." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014).

Appellant next argues that, while there was circumstantial evidence supporting the Special Master's, and, by extension, the trial court's, findings, other circumstantial evidence weighs against them. But appellant never argues that the evidence he cites outweighs the evidence on which the trial court relied so as to render the trial court's findings clearly erroneous. He merely provides a laundry list of evidence that could have led the trial court to a different conclusion. But this Court's review is for clear error, meaning appellant must leave this Court with "a definite and firm conviction that a mistake has been made." *Lehman Inv Co, LLC*, 347 Mich App at 747. Appellant has not satisfied this burden. While it is true that the evidence in this case was far from conclusive, the evidence on which the trial court relied was more than sufficient to withstand appellate review. The mere fact that there is other evidence which could lead to an alternative conclusion is not enough to overturn the trial court's finding.[1]

---

[1] Appellant also argues on appeal that appellees violated the Michigan Rules of Professional Conduct (MRPC) by engaging in a business relationship with him and taking—and then selling—1/3 interests in SBR. He claims that such an agreement is unenforceable under MCPC 1.8(a). However, while appellant challenged appellees' professional conduct at various stages throughout the proceedings below, he never argued in the trial court that the agreements were unenforceable. Thus, this issue is unpreserved. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). "In civil cases, Michigan follows the raise or waive rule of appellate review." *Id*. (quotation marks and citations omitted). "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. Because appellant did not raise this issue in the trial court, it is waived and we decline to consider it. *Id*.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Daniel S. Korobkin